**BOARD OF ADJUSTMENT OF the CITY OF DALLAS, Texas, Appellant**

v.

**Mahesh D. PATEL and Bipin B. Patel, Appellees.**

No. 06–94–00061–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 16, 1994.

Decided Sept. 8, 1994.

Order Overruling Motion for Rehearing Nov. 10, 1994.

W. Kent McIlyar, Asst. City Atty., Dallas, for appellant.

H. Louis Nichols, Nichols Jackson Dillard Hager & Smith, LLP, Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

The Board of Adjustment of the City of Dallas appeals from a summary judgment reversing the Board's decision to terminate a nonconforming use by the Mile High Motel in Dallas. The questions on appeal are whether the current owners of the motel are entitled to an amortization period for their investment, even though they purchased the motel after it had become a nonconforming use, and whether that part of the Dallas Development Code allowing any citizen to require the Board of Adjustment to terminate a nonconforming use is an unconstitutional delegation of powers that denies the owners equal protection and due process of law. We answer the first question yes and the second question no, and therefore affirm the district court's judgment.

The Mile High Motel is located at 2740 Lucky Street in Dallas in an area zoned for general retail. A certificate of occupancy to operate the motel was issued in February of 1984. In September of 1987, the motel became a nonconforming use when the City adopted Ordinance No. 19700, which amended the Dallas Development Code by requir-

ing hotels and motels having less than fifty rooms to obtain a specific use permit to operate.

Mahesh Patel and Bipin Patel purchased the motel in February of 1989 for approximately $200,000.00. They operated it as a nonconforming use, without a specific use permit, until January of 1992, when a Dallas citizen, acting under Section 51–4.704(a)(1) of the Dallas Development Code filed an application with the Board to terminate the nonconforming use.

According to the Dallas Development Code, the Board has the power and duty to terminate nonconforming uses and set the terms of amortization for the owners' investments. In this case, the Board conducted a hearing, and after inspecting the property, considering evidence, and determining facts, it fixed a termination date of October 31, 1992. The Board further found that, because the Patels purchased the motel after it had already become a nonconforming use, their investment could not be amortized.

Pursuant to TEX.LOCAL GOV'T CODE ANN. § 211.011 (Vernon 1988), the Patels appealed the Board's decision to the district court by petition for writ of certiorari. Both parties moved for summary judgment in the district court. The court ultimately denied the Board's motion and granted the Patels' motion, reversing the Board's decision.

 A Board of Adjustment acts as a quasi-judicial body. An appeal from its decision is to the district court by writ of certiorari. *Currey v. Kimple,* 577 S.W.2d 508, 512 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.) (construing prior statute). The complaining party has the burden to show that the decision of the Board is illegal and, to do so, must present a very clear showing that the Board abused its discretion. The only question that may be raised in the review is the legality of the order. *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67 (1945). Although some appellate courts have used the substantial evidence rule as the standard of review in these cases, it is no longer appropriate. *Nu–Way Emulsions, Inc. v. City of Dalworthington Gardens,* 617 S.W.2d 188, 189 (Tex.1981); *Board of Adjustment of City of Corpus Christi v. Flores,* 860 S.W.2d 622, 625–26 (Tex.App.—Corpus Christi 1993, writ denied).

 To be entitled to summary judgment, the movant must demonstrate by competent summary judgment evidence that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex. 1970). When, as in this case, both parties have moved for summary judgment, we review all of the summary judgment evidence supporting both motions before deciding whether either of the motions should have been granted. *Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 605 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Each party must clearly prove its right to judgment as a matter of law, and neither party may prevail simply because the other party failed to make such proof. *James v. Hitchcock Independent School Dist.,* 742 S.W.2d 701 (Tex. App.—Houston [1st Dist.] 1987, writ denied). Issues not expressly presented to the trial court by written motion, answer, or other response may not be considered on appeal as grounds for reversal. TEX.R.CIV.P. 166a(c). We may consider only the summary judgment evidence on file before the court at the time of the hearing of the motions, *Gandara v. Novasad,* 752 S.W.2d 740, 743 (Tex.App.— Corpus Christi 1988, no writ), and we must render judgment on the motion that should have been granted. *Members Mutual Ins. Co. v. Hermann Hospital,* 664 S.W.2d 325, 328 (Tex.1984).

 We first determine whether the district court correctly granted the Patels' motion for summary judgment. The court indicated in its order that it based its judgment on Grounds 1–5 and Ground 12 in the Patels' motion. In those grounds, the Patels contended that the Board's order is illegal because:

(1) it is not supported by substantial evidence;

(2) it is unreasonable, arbitrary, capricious, and not supported by the law or the evidence;

(3) the Board failed to make a finding of the full value of the structure and failed to make a finding as to the investment in the nonconforming use, as required by the Dallas Development Code;

(4) the decision is incorrect because the Board held that the owners do not have a right to recover any investment made after the motel became a nonconforming use;

(5) there was no evidence showing the owners' investment in the nonconforming structure at the time the property became nonconforming;

and

(12) the Board must consider the owners' investment at the time the property became a nonconforming use and fix the termination date based on the owners' investment in the structure and in the nonconforming use at the time it became nonconforming.

The Dallas Development Code provides that any person may request that the Board establish a termination date for a nonconforming use and that, upon receiving such a request, the Board shall provide a termination date for the nonconforming use under a plan whereby the owners' actual investment in the structure before the use became nonconforming can be amortized within a definite time period. DALLAS DEVELOPMENT CODE § 51–4.704(a)(1).

In this case, the Board concluded that the Patels were not entitled to amortization because they purchased the motel after it had become a nonconforming use in 1987. The Board took the position that the investment of the party owning the motel when it became nonconforming did not pass to the Patels when they purchased it. That position is incorrect.

Section 51–4.704(a)(1) does not refer to the current owners' investment. It provides that the Board shall determine the investment of the person who owned the property at the time the use became nonconforming. That investment passes to a subsequent purchaser, who is then entitled to amortize that portion of the original owners' investment remaining at the time the use became nonconforming. *Board of Adjustment of City of*

*Dallas v. Patel,* 882 S.W.2d 87 (Tex.App.—Amarillo 1994, n.w.h.). The Board therefore clearly abused its discretion in disallowing any amortization for the Patels, and the district court correctly rendered summary judgment reversing that decision.

■ In a cross-point, the Patels contend that the nonconforming use ordinance of the City of Dallas is unconstitutional because it delegates to any person the right to complain of a nonconforming use and request a hearing to terminate that nonconforming use. They argue that the ordinance denies them equal protection of the laws and due process because, in effect, it delegates to any private citizen the right to terminate a nonconforming use.

We assume that the Patels' due process claim is one of substantive due process rather than procedural due process, because they were obviously afforded procedural due process in the termination proceeding. They had adequate notice, a hearing, and a full opportunity to present evidence. We also assume that their due process and equal protection claims are asserted under both the federal and state constitutions. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 3; TEX. CONST. art. I, § 19.

■ Legislative bodies may delegate legislative functions to subordinate bodies or agencies, so long as the statute or ordinance delegating those powers is clothed with definite guidelines. The test of constitutionality is whether the delegating entity has prescribed sufficient and adequate standards to guide the discretion that is vested in the subordinate body or agency. *Texas Antiquities v. Dallas County Community College,* 554 S.W.2d 924 (Tex.1977). Arbitrary, uncontrolled, and unreviewable discretion may not be delegated. *Fire Dep't of City of Fort Worth v. City of Fort Worth,* 147 Tex. 505, 217 S.W.2d 664 (1949).

The Dallas Development Code does not delegate the enforcement of its nonconforming use ordinance to its citizens. All it does is provide that the enforcement of the nonconforming termination procedure can be initiated by a citizen complaint or application. Anyone, including the City itself, may com-

plain about a nonconforming use. On such a complaint, the Board of Adjustment decides whether the law has been violated and, if it has, applies a remedy. All discretion in applying and enforcing the law is vested in the Board, limited by clear and detailed guidelines. Giving a citizen the right to initiate a law enforcement proceeding by filing a complaint is not an unlawful delegation of governmental powers, and it does not deny a person affected by the proceeding substantive due process or equal protection of the laws, under either the United States or the Texas Constitutions.

The cases relied on by the Patels are inapposite. They involve situations where the decision-making process has been delegated to a person or body without specific limiting guidelines. *See, e.g., Eubank v. City of Richmond*, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912); *Williams v. Whitten*, 451 S.W.2d 535 (Tex.Civ.App.—Tyler 1970, no writ).

The district court properly refused to hold that the ordinance is an unconstitutional delegation of governmental powers.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

In its motion for rehearing the Board argues that, under the Declaratory Judgment Act, TEX.CIV.PRAC. & REM.CODE ANN. § 37.006 (Vernon 1986),[1] the City of Dallas was a necessary party to this action and the court had no jurisdiction to proceed in its absence.

This point was not raised either at trial or in the Board's brief, and it may not now be raised for the first time. Moreover, the point is without merit for several reasons, one being that this action was not a declaratory judgment action involving the validity of a municipal ordinance.

The motion for rehearing is overruled.

---

1. TEX.CIV.PRAC. & REM.CODE ANN. § 37.006(b) (Vernon 1986) provides:
 In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.