Steven **DENGLER** and Russell Dengler, Appellants,

v.

**THE CITY OF GROVES, Texas; The Board of Adjustment of the City of Groves, Texas; The Building Inspector of the City of Groves, Texas and Larry's French Market, Inc., Appellees.**

No. 09–98–476CV.

Court of Appeals of Texas, Beaumont.

Submitted June 23, 1999.

Decided Aug. 26, 1999.

419

Bruce Gregory, H.P. Wright, Marcus A. Pitre, Wright & Pitre, Port Neches, for appellants.

James M. Black, Black & Black, Bob K. Monk, McPherson & Monk, Port Arthur, for appellees.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

Appellants Steven Dengler and Russell Dengler ("Denglers") appeal from the trial court's granting of two summary judgments against them. One summary judgment was granted in favor of the City of Groves, Texas ("City"), the Board of Adjustment of the City of Groves ("Board"), and the Building Inspector of the City of Groves ("Building Inspector") (collectively "City appellees"); the trial court granted the other summary judgment in favor of appellee Larry's French Market, Inc. ("Larry's"). At issue in the case is whether the presence of dancing in Larry's is a permitted use within a C–1 Retail Business District under the City of Groves zoning ordinances.

In February 1998 the Denglers, each of whom lives in close proximity to Larry's, filed a complaint with Elmer Lewis, the Building Inspector of Groves, Texas. The Denglers alleged that Larry's was in violation of § 8-505 of the city zoning ordinances. Section 8-505 governs "permitted uses" in the C-1 Retail Business District in which Larry's is located. One of those permitted uses is a "restaurant[] with on-premise beer and wine." In addition to being a restaurant with an on-premise alcohol permit, Larry's also offers public dancing in its facility. For that reason, the Denglers contend Larry's is in violation of the ordinance.

The Building Inspector reviewed the Denglers' complaint and concluded Larry's was not in violation of the ordinance as long as food was being served at all times that dancing was taking place and no ad-

mission fee was charged. After the Building Inspector reached his decision, the Denglers appealed to the Board, which affirmed the Building Inspector's decision.

Because of our disposition of the case, the procedural intricacies, though involved, are of significance. Having exhausted their administrative remedies, the Denglers sought judicial review of the Board's decision in district court. Pursuant to Tex. Loc. Gov't Code Ann. § 211.011 (Vernon 1999), Steven, Russell, and Eric Dengler filed a petition for writ of certiorari and an action for declaratory judgment, along with an ancillary request for injunctive relief against Larry's. On August 5, 1998, two of the three plaintiffs, Russell and Steven Dengler, filed an "amended motion for summary judgment." The City appellees filed their motion for summary judgment on August 19, 1998; Larry's filed its summary judgment motion two days later. As we appreciate their pleadings, the appellees' motions included all three plaintiffs. On August 28, 1998, the trial court held a hearing on the summary judgment motion filed by Steven and Russell Dengler and that filed by the City appellees. On September 11, 1998, some three weeks after the hearing, but before the date the trial court signed the order on the summary judgment motions, all three of the original Dengler plaintiffs—Steven, Russell, and Eric—filed another motion for summary judgment. On September 23, 1998, the trial court signed an order granting the summary judgment motion of the City appellees and denying the "amended motion for summary judgment" filed by Steven and Russell Dengler. On October 16, 1998, the trial court heard Larry's motion for summary judgment. That same day, the trial court granted Larry's motion and dismissed the Denglers' suit with prejudice. Russell and Steven Dengler have appealed the summary judgments rendered against them.

██ The Denglers contend the Board abused its discretion in affirming the decision of the Building Inspector. The Board's role and the standard to be employed in reviewing its decision have been explained by the Corpus Christi and Texarkana courts of appeals.

A Board of Adjustment acts as a quasi-judicial body. An appeal from its decision is to the district court by writ of certiorari. [Tex. Loc. Gov't Code Ann. § 211.011 (Vernon 1999) ] The complaining party has the burden to show that the decision of the Board is illegal and, to do so, must present a very clear showing that the Board abused its discretion. The only question that may be raised in the review is the legality of the order . . . .

To be entitled to summary judgment, the movant must demonstrate by competent summary judgment evidence that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. When, as in this case, both parties have moved for summary judgment, we review all of the summary judgment evidence supporting both motions before deciding whether either of the motions should have been granted. Each party must clearly prove its right to judgment as a matter of law, and neither party may prevail simply because the other party failed to make such proof.

*Board of Adjustment of City of Dallas v. Patel,* 887 S.W.2d 90, 92 (Tex.App.—Texarkana 1994, writ denied) (citations omitted).

Review of a decision by a Board of Adjustment is not by trial de novo where facts are established; the district court must only answer a question of law, i.e., whether the Board of Adjustment abused its discretion. The district court shall consider the original papers before the Board, as well as evidence introduced before the court, and shall determine whether or not the Board abused its discretion.

*Board of Adjustment of City of Corpus Christi v. Flores,* 860 S.W.2d 622, 625 (Tex.App.—Corpus Christi 1993, writ de-

nied) (citations omitted). "The test for abuse of discretion is whether a board acted 'without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.'" *Southwest Paper Stock, Inc. v. Zoning Bd. of Adjustment of Fort Worth,* 980 S.W.2d 802, 805 (Tex.App.—Fort Worth 1998, pet. denied)(quoting *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990)).

 The question of whether the Board abused its discretion is a question of law appropriately determined by summary judgment. *Id.* at 806. Since summary judgments were filed herein, we must determine whether the City appellees established as a matter of law that the Board did not abuse its discretion in affirming the decision of the Building Inspector. If there was some evidence of substantive and probative character that supported the Board's decision, then the trial court, as well as the Board, did not abuse its discretion and the summary judgments were proper. *Id.*

 The record contains affidavits explaining the background of the dispute. Attached to Larry's response to the Denglers' motion for summary judgment is the affidavit of Larry Judice, owner of Larry's. According to Judice, Larry's began operations as a grocery store in 1979. In 1981 Judice opened a delicatessen in the grocery store, and over time "we became almost exclusively a delicatessen (as opposed to grocery store sale).... We began to provide music as entertainment for the customers of the delicatessen ..." In their affidavits (dated July 8, 1998), Steven and Russell Dengler both state that "[a]pproximately six months ago, Larry's began having dancing in their restaurant. The dancing has resulted in increased traffic on Hayman Street with many patrons using my driveway to turn their vehicles around to either park on the street or return to Larry's parking lot. There is increased

noise from the traffic and from people loitering in Larry's parking lot." Also contained in the record is a memo from the Groves Building Inspector to the city manager, mayor, and city council. In his memo, the Building Inspector states that the Jefferson County Appraisal District records indicated that Larry's has a total of 12,954 square feet with about 5,500 square feet in the restaurant area, 3,000 square feet in the grocery sales area, and about 4,500 square feet in stockroom area.[1] He further states that "the dance floor area in question is 15 foot by 15 foot or 225 square feet. This is about 4% of the restaurant area. The main source of income is from the sale of food and very little from the sale of beer and wine."

In their petition before the district court, the Denglers contend the Board's decision that Larry's was not in violation of the zoning ordinances is "illegal." According to § 8–505 of the zoning ordinances, "[p]ermitted uses ... within the district [C–1 District] are subject to the following named uses, or similar uses." As noted above, the permitted use in § 8–505, which all parties agree is applicable to Larry's, is a "restaurant[ ] with on-premise beer and wine." A restaurant with dancing, however, is not named as a permitted use in the C–1 District. Moreover, the Denglers maintain that, by virtue of the definition of "dance hall" in the Groves Code, Larry's actually comes under the permitted use of "[d]ance hall, commercial" in § 8–605, which pertains to the Central Business District.

In their motion for summary judgment, the City appellees contend the Board and the Building Inspector were correct in their interpretation of Groves zoning ordinance § 8–505 and acted within their discretion. The City appellees maintain § 8–505 permits a restaurant that allows dancing to operate in the C–1 District; furthermore, they contend that a restaurant that

---

1. At the hearing by the Board of Adjustment, one person speaking before the Board stated that Larry's contains 4,000 square feet with a seating capacity of 310 and that the dance floor will accommodate ten couples.

allows dancing does not constitute a public dance hall, a use not permitted in the C–1 District.

A definition of "dance hall" is contained in Article IV. Dances and Dance Halls, Chapter 21, § 21–52 of the Code. There the terms "public dance" and "public dance hall" are both defined:

## DIVISION 1. GENERALLY

### Sec. 21–52. Definitions.

The term "public dance," as used in this article, shall be taken to mean any dance or ball to which admission can be had by payment of a fee, or by the purchase, possession or presentation of a ticket or token, or at which a charge is made for caring for clothing or other property, or any other dance to which the public generally may gain admission, with or without the payment of a fee.

The term "public dance hall," as used herein, shall be taken to mean any room, place or space in which a public dance or public ball is held, or any room, place or space where dancing is permitted.

. . . .

## DIVISION 2. DANCE HALL LICENSE

### Sec. 21–65. Required.

It shall be unlawful for any person to hold or conduct any public dance within the city, unless the dance hall in which the same is held is licensed for such purpose.

It shall likewise be unlawful for any person to dance at any public dance hall that is not duly licensed and any person engaging in a dance or dancing at an unlicensed public dance hall shall be deemed guilty of disorderly conduct and a misdemeanor. The owner, proprietor, manager, or person in charge of any unlicensed public dance hall who permits or condones any person to engage in a

dance shall also be guilty of a misdemeanor.

. . . .

## DIVISION 3. DANCE PERMIT

### Sec. 21–79. Required.

In addition to the public dance hall license provided for in this article, there shall be required a public dance permit, and no person shall hold a public dance until a permit is issued therefor by the city marshal.

Our review of the definition of "dance hall" indicates the activity at Larry's clearly falls within that part of the definition stating that a "dance hall" is "any room, place or space where dancing is permitted." [2] It is undisputed that Larry's has an area set aside in its establishment for dancing and that members of the public dance there. It is also undisputed that Larry's applied for and received a "Dance Hall License/Public Dance Permit" from the City of Groves. Such application and license exemplify by the substance of their contents the nature of the establishment. Although appellees claim there is no relationship between the Code and the zoning ordinances, we conclude they are incorrect. Section 21–67 of the Groves Code provides as follows:

No dance hall license shall be granted unless it shall appear, upon inspection and investigation by the city marshal, the health officer, the fire marshal and the building inspector, that the premises desired to be used for the purpose of conducting a dance hall complies with the laws of the state, the provisions of this article, the ordinances of the city regulating health and sanitation, the fire regulations, *the zoning requirements* and the building code, and that the proposed dance hall is properly ventilated and supplied with sufficient toilet conveniences, and a safe and proper place for the purpose for which it is used, as determined by the regulations adopted

---

**2.** This Court is not the author of the definition contained in the Groves Code.

by the city. The officers named herein shall, in their respective capacities, note their approval or disapproval upon the application for the license. (emphasis added)

Clearly, a dance hall license cannot be issued unless the zoning requirements are satisfied. By virtue of the definition in the City's own ordinances, Larry's constitutes a dance hall and, as such, must conform to the City's zoning requirements.

We conclude the trial court abused its discretion in affirming the decision of the Board of Adjustment. The language in the zoning ordinance for the C–1 District does not include a restaurant with dancing as a permitted use. Instead, the permitted use is a "restaurant[ ] with on-premise beer and wine." Since there is no indication in the record that the term "restaurant" is defined in the City's ordinances, we give it its common definition—namely, "an establishment where refreshments or meals may be procured by the public: a public eating house." WEBSTER'S⁰ THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1936 (1986). The common definition includes both the concept of meals and drinks, but not dance.

To conclude, as did the Board, that Larry's operation falls within a permitted use in the C–1 District, as long as food is served when dancing is taking place and no fee is charged, is an abuse of discretion. The Board's decision, as well as that of the trial court, serves to enlarge upon the list of permitted uses in section 8–505 and, indeed, to add a new one. Furthermore, by virtue of the definitions of "dance hall" · and "public dance" contained in the Code, the operation of Larry's as a restaurant with dancing does not constitute a "similar use" that would bring Larry's into conformity with § 8–505. In finding that Larry's was not in violation of the zoning ordinances, the Board disregarded guiding rules and principles and abused its discretion. We find the trial court erred in granting summary judgment for the City, the Building Inspector, and the Board.

■ Larry's also filed a motion for summary judgment. The grounds, as stated by Larry's in its motion, are as follows:

"There is no evidence of any cause of action upon which Plaintiffs may be granted affirmative relief as stated in Plaintiffs' Original Petition. Further, this Defendant would show that there is no evidence of any causation of any damages, as may be alleged in Plaintiffs' Original Petition and any amendments thereto."

Larry's summary judgment motion has no evidence attached and does not refer us to any. In essence, its motion is a claim for summary disposition on the basis of failure to state a cause of action. *See Perry v. S. N.,* 973 S.W.2d 301, 303 (Tex.1998) (A court may not grant summary judgment for failure to state a cause of action without first giving the plaintiff an opportunity to amend the pleadings.) Neither Larry's nor the City appellees filed special exceptions regarding a claim of "no evidence of any cause of action" or "no evidence of any causation of damages." The record reveals that even if Larry's claim of failure to state a cause of action had any merit, appellants were not afforded a fair opportunity to amend and correct any alleged deficiency in their pleadings. *See id.* We, therefore, conclude the trial court erred in granting Larry's motion for summary judgment.

The motions for summary judgment of the City appellees and Larry's included all three plaintiffs, Eric, Russell, and Steven, and encompassed all the issues in the case. The trial court's summary judgment order granting the appellees' motions for summary judgment was, therefore, final. *See North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966). We now turn to Steven and Russell Dengler's motion for summary judgment, which, as described previously, was before the trial court at the time of the August 28, 1998, hearing. That "amended motion for summary judgment" expressly included only

two (Russell and Steven) of the three plaintiffs in the case and expressly contemplated that future hearings would be held on attorney's fees. The record contains no order of severance or dismissal regarding Eric Dengler; nor does it contain any summary judgment motion filed by Eric Dengler prior to the August 28, 1998, hearing. To grant summary judgment in favor of Russell and Steven on their "amended motion for summary judgment" (containing only two of the three plaintiff-movants) would be to render only a partial summary judgment without all of the parties being present and without the issue of attorney's fees being resolved. This we decline to do.

We, therefore, find the trial court erred in granting the two summary judgments in favor of the City appellees and Larry's French Market, Inc., and we remand the case to the trial court for further proceedings consistent with this opinion.[3]

### REVERSED AND REMANDED.

DON BURGESS, Justice, dissenting.

I respectfully dissent to the majority's determination that the trial court abused its discretion in upholding the Board's decision. As the majority correctly notes, the only issue before the district court, and this court, is whether the Board acted "without reference to *any* guiding rules or principles" when it determined Larry's is a restaurant. The majority states, correctly, "[i]f there was some evidence of substantive and probative character that supported the Board's decision, then the trial court, as well as the Board, did not abuse its discretion and the summary judgments were proper." The majority then proceeds to wholly ignore the case law provided by the City appellees in support of the Board's decision. These cases are authority, albeit not controlling, supporting the Board's determination. They establish the

Board's decision was not "arbitrary or unreasonable."

Furthermore, there is "some evidence" supporting the Board's decision. The record establishes Larry's is a restaurant with on-premise beer and wine. Food was being served at all times dancing was taking place and no admission fee was charged. The dance floor is only 4% of the restaurant area. The main source of income is from the sale of food with very little income from the sale of beer and wine. The restaurant seats 310 people while the dance floor holds only 20. This is certainly "some evidence of substantive and probative" character supporting the Board's decision.

The majority holds that Larry's comes under the definition of "public dance hall" solely because it is a "room, place or space where dancing is permitted." This potentially leads to absurd results. Does a church become a dance hall if dancing is permitted after a wedding? Does a private home become a dance hall if the family "rolls up the rugs" and dances? In spite of the apparent broadness of what is the last phrase of the definition, common sense dictates there must be places where dancing is permitted that are not public dance halls.

The majority also gives weight to the fact that Larry's applied for and received a dance hall permit. This is not dispositive. The fact that both Larry's and the City thought a dance hall permit was necessary does not make it so as a matter of law.

In my opinion, the trial court's determination that Larry's is a restaurant with dancing, not a dance hall with food, is consistent with the case authority supplied by the City appellees and the evidence in the record and therefore, was not made without reference to any guiding rules or principles. Consequently the decision was

---

**3.** As noted in the body of the opinion, we are not ruling on the Dengler's "amended motion for summary judgment," considered by the trial court on August 28, 1998, because the motion does not include all the parties in the

suit. Before a ruling may be made on such a motion, the trial court must dispose of all the issues and parties in the case, including Eric Dengler.

not arbitrary or unreasonable and does not constitute an abuse of discretion. I would affirm the judgment of the trial court and *"laissez le bon temps roulez!"*