CITY OF DALLAS, Texas, Board of Adjustment of the City of Dallas, Texas and Raj Sharma, in his capacity as the Building Official of the City of Dallas, Appellants,

v.

Doug VANESKO and Grace Vanesko, Appellees.

No. 05–03–00022–CV.

Court of Appeals of Texas, Dallas.

Nov. 19, 2003.

Rehearing Overruled Feb. 9, 2004.

---

Christopher D. Bowers, Assistant City Attorney, Dallas, for Appellants.

Roger Albright, Law Offices of Roger Albright, Dallas, for Appellees.

Before Justices MOSELEY, MARTIN RICHTER and FRANCIS.

## OPINION

Opinion by Justice MARTIN RICHTER.

This is a zoning case. The Vaneskos sought a variance from a local zoning ordinance, but the Board of Adjustment refused to grant a variance. The Vaneskos filed an application for writ of certiorari in the trial court in order to seek review of the Board of Adjustment decision. The cause was tried to the court below without a jury. The only evidence considered was the record of the Board of Adjustment proceedings submitted upon the return and supplemental return of the writ of certiorari. The trial court reversed the Board of Adjustment on the basis that its decision was an abuse of discretion and remanded for further proceedings consistent with the holdings of *Town of S. Padre*

*Island v. Cantu,* 52 S.W.3d 287 (Tex.App.-Corpus Christi, 2001, no pet.) and *Board of Adjustment v. McBride,* 676 S.W.2d 705, 709 (Tex.App.-Corpus Christi, 1984, no writ). The City of Dallas, the Board of Adjustment for the City of Dallas, and Raj Sharma, in his capacity as the Building Official for the City of Dallas [1], bring three issues, claiming the trial court erred by abusing its discretion when it 1) remanded the case for the Board to consider *Cantu* and *McBride,* 2) concluded a city inspector's mistake in approving a building permit was a unique oppressive condition resulting in unnecessary hardship to the Vaneskos, and 3) made findings of fact and conclusions of law that ignored substantial evidence that supported the Board's decision. We affirm the decision of the trial court.

## I. Factual Background

The Vaneskos purchased their property in Dallas in 1991 and lived in an existing single family residence until 1996, when they moved into an apartment located above their garage. The Vaneskos then had the existing home demolished in order to build a newer and larger home. The record indicates that this section of North Dallas was, at the time, a "hotbed" of redevelopment.

Doug Vanesko designed his own home and acted as his own general contractor. Realizing he was a novice contractor, Doug Vanesko paid the city building inspector an additional sum of money to approve his construction plans. The city not only approved those plans, but also made periodic inspections to monitor the construction.

As the home was nearing completion, and after the structure's steel truss roof was completely framed in, the building inspector stated that he thought that the roof appeared two feet too high. The Vaneskos were not advised or ordered to stop construction, but were told to seek a variance from the Board. With the support of the building inspector's office, the Vaneskos filed for a variance.

After the building inspector first advised that the structure appeared to be too high, and the procedure for seeking a variance commenced, the parties discovered that the permit and the plans approved by the building inspector were in error. The Vaneskos' property is in an R–10 zoning area, which provides for a maximum structure height of thirty feet. Apparently, the plan reviewer in the city inspector's office believed the lot to be in an R–1 or R–2 zoning area, which would allow a maximum height of thirty-six feet.

The approved plans provided for a 38.25 foot height [2]. The house is actually 38.11 feet high. Although the house is 8.11 feet too high as per the zoning ordinance in issue, it was substantially built in accordance with the plans approved by the city.

The evidence indicates that it would cost the Vaneskos between $50,000—$100,000 to remove and replace the roof. Further, 80% of the neighbors surrounding the property supported the granting of the variance, while the remaining 20% expressed no opinion other than to indicate that they were unhappy with the City that the situation had gotten to that point.

During the hearings before the Board on the request for a variance, the Board

---

1. The three appellants will be collectively referred to as the "City." When the Board of Adjustment is referenced individually, it will be denominated the "Board."

2. The City asserts that the permit only provided for a maximum height of thirty-six feet. However, the actual permit itself is not in the record, although the plan drawing is in the record.

was specifically instructed by an assistant city attorney to not consider the fact that the permit had been issued in error or that the home was already completely built. Accordingly, the Board denied the request for a variance.

## II. Standard of Review

■ A board of adjustment is a quasi-judicial body. *Bd. of Adjustment v. Flores,* 860 S.W.2d 622, 625 (Tex.App.-Corpus Christi 1993, writ denied). Section 211.011 of the local government code provides a means for challenging an action taken by a city's zoning board of adjustment. *See* TEX. LOCAL GOV'T CODE ANN. § 211.011 (Vernon Supp.2003). This statute provides that a person aggrieved by a zoning board's action may petition the court for a writ of certiorari within ten days after the board's decision is filed. *See id.* at 211.011(a), (b). The district court sits only as a court of review, and the only question that may be raised by a petition for writ of certiorari is the legality of the board's order. *See* TEX. LOCAL GOV'T CODE ANN. § 211.011(a) (Vernon Supp. 2003); *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 286–87, 190 S.W.2d 67, 70 (1945); *Southwest Paper Stock, Inc. v. Zoning Bd. of Adjustment of Fort Worth,* 980 S.W.2d 802, 805 (Tex.App.-Fort Worth 1998, pet. denied). The board's order is presumed to be legal, and the party attacking it has the burden of establishing its illegality. *See Board of Adjustment of Dallas v. Patel,* 882 S.W.2d 87, 88 (Tex. App.-Amarillo 1994, writ denied).

■ If the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence. *See* TEX. LOCAL GOV'T CODE ANN. § 211.011(e) (Vernon Supp.2003). However, review of the board's decision is not by trial de novo. *See Boehme Bakery,* 144 Tex. at 286–87, 190 S.W.2d at 70. The

trial court must only answer a question of law, i.e., whether the board abused its discretion. *See Nu–Way Emulsions, Inc. v. City of Dalworthington Gardens,* 617 S.W.2d 188, 189 (Tex.1981) (per curiam); *Dengler v. City of Groves,* 997 S.W.2d 418, 420 (Tex.App.-Beaumont 1999, pet. denied).

■ It is an abuse of discretion for a zoning board to act arbitrarily and unreasonably without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A board of adjustment abuses its discretion if it clearly fails to analyze or apply the law correctly. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (original proceeding). The Board does not abuse its discretion as long as some evidence of substantive and probative character exists to support the board's decision. *See Southwest Paper Stock, Inc.,* 980 S.W.2d at 805–06.

■ The district court may reverse or affirm, in whole or in part, or modify the decision that is appealed. *See* TEX. LOCAL GOV'T CODE ANN. § 211.011(f) (Vernon Supp.2003). However, the district court cannot put itself in the adjustment board's position or substitute its discretion for that of the board. *See Board of Adjustment of Corpus Christi v. Flores,* 860 S.W.2d 622, 625 (Tex.App.-Corpus Christi 1993, writ denied); *see also Downer,* 701 S.W.2d at 241–42.

## III. Applicable Law

Under state law, a board of adjustment "may authorize in specific cases a variance from the terms of a zoning ordinance if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and

substantial justice is done." TEX. LOCAL GOV'T CODE ANN. § 211.009(a)(3) (Vernon 1999).

In Dallas, which is a home rule city,[3] the Board's decision-making authority in variance cases is further limited by city ordinance. The guiding principles which govern the Board's decision are found in the Dallas Development Code, which authorizes the Board to grant variances from zoning regulations if the variance is "necessary to permit development of the specific parcel of land which differs from other parcels of land by being of such a restrictive area, shape, or slope that it cannot be developed in a manner commensurate with the development upon other parcels of land in districts with the same zoning classification." DALLAS, TEX., DALLAS CITY CODE § 51A–3.102(d)(10) (2000). "A variance may not be granted to relieve a self-created or personal hardship, nor for financial reasons only, nor may a variance be granted to permit any person a privilege in developing a parcel of land not permitted by this chapter to other parcels of land in districts with the same zoning classification." See id.

The Corpus Christi court of appeals has encountered a case remarkably similar to the one before us. See Town of S. Padre Island v. Cantu, 52 S.W.3d 287 (Tex.App.-Corpus Christi 2001, no pet.). The Cantus prepared plans for the construction of their home and submitted them to the building department for approval. Id. at 288. The town issued a building permit for construction in accordance with the plans submitted. Id. When the home was nearly 80% complete, a building inspector informed the Cantus that a portion of their house protruded two feet over a setback line mandated by the zoning ordinance. Id. at 288–89.

The Cantus subsequently requested a variance from the board of adjustment. Id. at 289. Evidence was presented that the protrusion did not pose a health or safety risk, and at least some of the neighbors supported the granting of a variance. Id. The board denied the variance, and the Cantus appealed to the trial court by writ of certiorari. Id. The trial court and, ultimately, the Cantu court, determined that the board abused its discretion in failing to grant the variance. Id. at 289, 291.

In so holding, the Cantu court noted that enforcement of the ordinance would substantially change the house's appearance and would make the house and the area less aesthetically pleasing. Id. at 290. The Cantu court considered the rule that in order to justify a variance, a hardship must not be self-imposed nor financial only and must relate to the very property for which the variance is sought, i.e., a condition unique, oppressive, and not common to other property. Cantu, 52 S.W.3d at 290 (citing Moody v. City of Univ. Park, 278 S.W.2d 912, 920 n. 2 (Tex.Civ.App.-Dallas 1955, writ ref'd n.r.e.)).

The Cantu court then determined that the Cantu's property was subject to a unique, oppressive condition, caused by the town's acquiescence to the building plans. Cantu, 52 S.W.3d at 290. The court acknowledged that substantial permanent improvements were made to the property, with the town's knowledge and under its supervision. Id. The Cantu court concluded that the improvements "altered the nature of the property." Id. at 291. Once the town withdrew the authorization to continue construction, the property was subject

**3.** *See e.g., Dallas Merchant's and Concessionaire's Association v. City of Dallas,* 852 S.W.2d 489, 490 (Tex.1993).

to a unique oppressive condition because the house could no longer be completed as designed without a variance. *Id.*

The *Cantu* court relied on the case *Bd. of Adjustment v. McBride,* 676 S.W.2d 705 (Tex.App.-Corpus Christi 1984, no writ). Based on facts similar to this case and to *Cantu, McBride* held that a board of adjustment is authorized to vary zoning regulations when hardship exists and where the variance would not be contrary to the public interest. *McBride,* 676 S.W.2d at 709.

■■■■ In the *Cantu* opinion, the Corpus Christi court referred to the relevant sections of the local government code, but did not set forth any local ordinance. In a home rule city, the local government code preempts a local ordinance to the extent it conflicts with the statute. *See Dallas Merchant's,* 852 S.W.2d at 491, *see also* TEX. LOCAL GOV'T CODE ANN. § 211.013(a) (Vernon Supp.2003). The fact that the legislature has enacted a law addressing a subject does not mean the complete subject matter is completely preempted. *Id.* (citing *City of Richardson v. Responsible Dog Owners,* 794 S.W.2d 17, 19 (Tex. 1990)). A general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached. *Dallas Merchant's,* 852 S.W.2d at 491. The local government code specifically provides that a local ordinance can impose higher standards. TEX. LOCAL GOV'T CODE ANN. § 211.013(a) (Vernon Supp.2003). Accordingly, this Court will weigh section 211.009(a)(3) of the local government code and *Cantu* in light of the local ordinance at issue in this case.

## IV. Application of Law to Facts

In its first issue, the City claims that the trial court erred when it reversed the Board's decision and remanded for the Board to reconsider the case in light of *Cantu* and *McBride. Cantu,* 52 S.W.3d 287; *McBride,* 676 S.W.2d 705. During the hearing before the Board, the city attorney advised the Board that it should not consider whether the permit had been erroneously issued or that the structure was already completed. Accordingly, the Board was not permitted to consider, and did not consider those factors.

■■■■ We conclude that the Board abused its discretion when it failed to analyze or apply the law—*Cantu* and *McBride*—correctly[4]. *See Walker,* 827 S.W.2d at 840. We further conclude that the trial court did not substitute its discretion for that of the Board. We overrule the City's first issue.

In its second issue, the City claims that the trial court erred when it concluded that the city inspector's mistake subjected the property to a unique oppressive condition, which resulted in unnecessary hardship to the Vaneskos. We note that the local ordinance may be construed to be slightly more restrictive than section 211.009(a)(3) of the local government code. The ordinance provides in part that the variance must be "necessary to permit development of the specific parcel of land which differs from other parcels of land by being of such a restrictive area, shape, or slope that it cannot be developed in a manner commensurate with the development upon other parcels of land in districts with the same zoning classification." DALLAS, TEX., DALLAS CITY CODE § 51A-3.102(d)(10) (2000).

---

4. We note that *Cantu* was handed down subsequent to the Board hearing in this case. However, *McBride* was already decided at that time.

■ A "parcel" is a tract of land. BLACK'S LAW DICTIONARY 1137 (7th ed. 1999). "Real property" is defined as land and generally whatever is erected or growing upon or affixed to land. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex.2000). Although the Property Code[5] does not define real property, the Probate Code defines "real property" as including "estates and interests in land, corporeal or incorporeal, legal or equitable, other than chattels real." TEX. PROB.CODE ANN. § 3(dd) (Vernon 2003). Real property is a general term for land. BLACK'S LAW DICTIONARY 1218 (6th ed. 1990). Real property means "land, and that which is annexed thereto." *Erwin v. Steele*, 228 S.W.2d 882, 885 (Tex.Civ.App.-Dallas 1950, writ ref. n.r.e.). Accordingly, we conclude that "parcel of land" is synonymous with "real property". Therefore, the term "parcel of land" includes permanent improvements. *See e.g. Cantu*, 52 S.W.3d at 291, fn. 1.

■ We agree with the *Cantu* court that once construction of the home began, the nature of the realty was affected because the construction materials which were affixed to the property actually became a part of the property. *Id.* The *Cantu* court concluded that once the town withdrew its authorization to continue construction in accordance with the erroneous plans, the real property became subject to a unique oppressive condition because the home could not be completed as designed without a variance. *Cantu*, 52 S.W.3d at 291. The same logic applies in the instant case.

Furthermore, there is evidence in the record that if the roof were replaced with a shallower pitched roof, it would not be as aesthetically pleasing and would inappropriately stand out among the other proper-ties in the neighborhood. Other evidence indicated that at least one rationale behind the design was the preservation of trees. Although the Board did not consider preservation of trees to be a worthy consideration and to be a "stretch," at least one court of appeals has held preservation of trees to be a legitimate concern when considering whether or not to grant a variance. *Southland Addition Homeowner's Assoc. v. Bd. of Adjustments*, 710 S.W.2d 194, 196 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.)

We conclude that the hardship was not merely personal to the Vaneskos, but was also linked to the realty. The shape of the structure at the time the error was discovered rendered the Vaneskos' parcel incapable of being developed in a manner commensurate with the development of other parcels of land in that zoning area. To require the roof to be replaced with a much more shallow-pitched roof would cause the Vaneskos' property to inappropriately stand out amongst the other properties which have more steeply pitched roofs. We overrule the City's second issue.

■ In its third issue, the City complains that the trial court abused its discretion by making findings of fact that ignored substantial evidence in support of the Board's decision. However, as the Board was advised not to consider, and did not consider, the fact that the permit had been erroneously issued and that the structure was already completed, the Board ignored substantial evidence to the contrary of its decision. We cannot say that the trial court abused its discretion when it made findings of fact that addressed the *Cantu* and *McBride* factors.

---

5. *See generally* TEX. PROP.CODE ANN. § 1.001–21.040 (Vernon 1984 & Supp.2003), TEX. PROP CODE ANN. § 21.041–50 (Vernon 2000 & Supp. 2003), TEX. PROP.CODE ANN. § 51.001–80 (Vernon 1995 & Supp.2003).

In one paragraph, the City argues that the trial court erred by finding that granting the variance would not violate the public interest. The City argues in conclusory fashion that a few Board members were concerned that granting the variance might set a precedent. However, it is well-settled that actions by the Board in granting a variance can never set a precedent. DALLAS, TEX., DALLAS CITY CODE § 51A–4.703(5) (2000). No other arguments were advanced by the City that granting the variance would violate the public interest.

Like *Cantu*, there is no evidence that the variance would present a health and safety issue, a majority of neighbors supported the variance, and to not grant the variance would make the property and the general area less aesthetically pleasing. *See Cantu*, 52 S.W.3d at 291. Accordingly, the trial court properly found that granting the variance would not be contrary to the public interest. We overrule the City's third issue.

## V. Conclusion

We affirm the judgment of the trial court.

MOSELEY, J., dissenting.

Opinion By Justice MOSELEY, dissenting.

The trial court found that the City of Dallas Zoning Board of Adjustment ("Board") abused its discretion in denying a variance from a height restriction applicable to the property of appellees Doug and Grace Vanesko under the City's zoning ordinances. On the City's appeal, the majority overrules the City's three issues and affirms this finding. Viewing the evidence before the trial court in the context of the Dallas City Code provision creating the Board and setting forth the parameters within which it may grant variances, I cannot conclude the Board abused its discretion. Because I would sustain the City's issues, reverse the judgment of the trial court, and enter judgement in favor of the City, I respectfully dissent.

### BACKGROUND FACTS

The Board's ability to grant a variance is governed by the Dallas City Code. Section 51A–3.102 of the Code creates the Board and sets forth its powers and duties, "which must be exercised in accordance with this chapter." DALLAS, TEX., CITY CODE § 51A–3.102(d) (2000). Those powers and duties include the power and duty

(10) To grant variances from ... height ... regulations that will not be contrary to the public interest when, owing to special conditions, a literal enforcement of this chapter would result in unnecessary hardship, and so that the spirit of the ordinance will be observed and substantial justice done. The variance must be necessary to permit development of the specific *parcel of land which differs from other parcels of land* by being of such a *restrictive area, shape, or slope* that it cannot be developed in a manner commensurate with the development upon other parcels of land in districts with the same zoning classification. A variance may not be granted to relieve a *self created* (sic) *or personal hardship, nor for financial reasons only*, nor may a variance be granted to permit any person a privilege in developing a parcel of land not permitted by this chapter to other parcels of land in districts with the same zoning classification.

*Id.* § 51A–3.102(d)(10) (emphasis added). Thus, unless the variance meets the requirements set forth above, the Board has neither the power nor the duty to grant it.

The Vaneskos applied for a variance from the City's zoning restrictions regarding the height of their newly-built house. Their application was based on two grounds: (1) they commenced construction of the house in reliance on the City's approval of their construction plans and did not become aware that the house as built would violate the height restriction of the applicable zoning ordinance until after the house (including the roof) was framed; and (2) the slope in the grade of their lot resulted in the house exceeding the code restrictions.[1] The City staff recommended that the variance be granted, but not on the basis of either ground raised by the Vaneskos. Rather, the staff recommendation was "largely due the site's restrictive area caused by mature trees on the site ... that the applicant intends to preserve." At an initial hearing, after hearing from the Vaneskos' lawyer and the City's staff, the Board deferred action on the Vaneskos' application to allow the staff to gather more information. At the second hearing, the Board receiving the additional information and heard again from the City's staff and from the Vaneskos' lawyer. At the conclusion of the second hearing, a motion to grant the variance failed, and thus the Board denied the application.

The Vaneskos timely filed an application for writ of certiorari in the district court, seeking a review of the Board's decision.[2] The cause was tried to the court below without a jury. The only evidence before the district court was the record of the Board's proceedings submitted upon the return and supplemental return of the writ of certiorari. The Vaneskos argued that in reaching its decision the Board refused to consider the facts that a building permit had been issued and the house had been built.

The trial court held that the Board's decision constituted an abuse of discretion, reversed the Board's decision, and remanded it to the Board "for further proceedings consistent with" *Town of South Padre Island v. Cantu,* 52 S.W.3d 287 (Tex.App.-Corpus Christi, 2001, no pet.) and *Board of Adjustment v. McBride,* 676 S.W.2d 705, 709 (Tex.App.-Corpus Christi, 1984, no writ). The trial court also entered findings of fact and conclusions of law. The City appealed.

### STANDARDS OF REVIEW

I do not disagree with the statements in the majority opinion regarding the applicable standards of review. However, I summarize those standards here to illustrate how I would apply them in this case.

When a person contests a zoning board's action by filing a timely writ of certiorari,

1. The Vaneskos' application asked the Board to grant the request for the following reasons:
     The plans for this residential construction were reviewed and approved by the City on November 4, 1998. Construction was commenced and is nearing completion. Subsequent to that time, the City has determined that based on the definition of height in conjunction with the slope of the property that the height of the house exceeds the requirements of the Development Code as a result of the slope. The application therefore requests a variance of the height of the building. Such a variance would not be contrary to the public interest since owing to the slope of this property literal enforce-

ment of the Chapter would result in an unnecessary hardship. This variance would allow the spirit of the ordinance to be enforced and substantial justice done. The variance is necessary to permit development of this specific parcel of property which differs from other parcels of property by being of such a restrictive slope, it cannot be developed in a manner commensurate with the development upon other parcels of land in R–10 zoning.

2. The Vaneskos asserted other claims, which were severed from the case below and are not before us.

the district court sits as a court of review to determine the sole question of the legality of the zoning board's order. *See* Tex. Loc. Gov't Code Ann. § 211.011(c) (Vernon Supp.2004); *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 286–87, 190 S.W.2d 67, 70 (1945); *S.W. Paper Stock, Inc. v. Zoning Bd. of Adjustment of Fort Worth*, 980 S.W.2d 802, 805 (Tex.App.-Fort Worth 1998, pet. denied). The board's order is presumed to be legal, and the parties attacking it (here the Vaneskos) have the burden of establishing its illegality. *See Bd. of Adjustment of Dallas v. Patel*, 882 S.W.2d 87, 88 (Tex.App.-Amarillo 1994, writ denied).

To establish that a board of adjustment's order is illegal, the party attacking the order must present a very clear showing that the board abused its discretion. *Id.* (citing *Boehme Bakery*, 190 S.W.2d at 71). A board of adjustment abuses its discretion if it acts "without reference to any guiding rules or principles," *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), or "clearly fails to analyze or apply the law correctly." *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (original proceeding). Whether a zoning board of adjustment abused its discretion is a question of law for the trial court. *See Nu–Way Emulsions, Inc., v. City of Dalworthington Gardens*, 617 S.W.2d 188, 189 (Tex.1981); *Murmur Corp. v. Bd. of Adjustment of City of Dallas*, 718 S.W.2d 790, 799 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). We review the trial court's decisions on questions of law de novo. *See Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002) (questions of law reviewed de novo); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Thus, the trial court's judgment should be reversed, and the Board's decision to deny the Vaneskos' variance upheld, unless the record before the trial court shows that the Board acted without reference to any guiding rules or principles or clearly failed to analyze or apply the law correctly. *See Downer*, 701 S.W.2d at 241–42, *Walker*, 827 S.W.2d at 840.

## Analysis

The City asserts three issues on appeal. First, it contends the trial court abused its discretion by remanding the case "with instructions to consider the Vaneskos' self-created or financial hardship when evaluating their request for a variance." Second, The City contends the trial court abused its discretion when it found that the City building inspector's mistake subjected the property to a unique oppressive condition and concluded that this condition resulted in an unnecessary hardship to the Vaneskos. Third, the City contends the trial court abused its discretion by making findings of fact that ignore substantial evidence in support of the Board's decision. Within these issues, the City argues that the trial court erred in entering findings of fact 5 through 8. Because of the interrelated nature of the City's issues, I will address them together.

The trial court's judgment is based in part on findings of fact 5, 7, and 8:

5. The Vaneskos (sic) property was subject to a unique oppressive condition caused by the City's acquiescence to the building plans since the house could no longer be completed as designed. A variance was necessary to prevent an unnecessary hardship that was not self-created or personal to the Vaneskos.

\* \* \*

7. The granting of [the Vaneskos'] application for a height variance would be necessary to permit development of a specific parcel of land which differs from other parcels of land by being of such a restrictive area, shape or slope that it

cannot be developed in the manner commensurate with the development upon other parcels of land in districts with the same zoning classification.

8. The granting of [the Vaneskos'] application for a height variance would not relieve a self-created or personal hardship.

As made clear at the hearing before the trial court and at oral argument before this Court, and as shown by the majority opinion, the only basis for these findings is the fact (undisputed) that a city employee reviewing the Vaneskos' construction plans erroneously issued a building permit by assuming the wrong maximum legal height for a structure on the property. This fact raises several problems.

First, the condition the variance seeks to remedy, the inability to complete the house as designed, is not a condition involving "a *restrictive area, shape, or slope*" for which the Board may grant a variance under the Dallas City Code. *See* DALLAS, TEX., CITY CODE § 51A–3.102(d)(10) (emphasis added). It is clear from the record that the area, shape, and slope of the Vaneskos' lot does not differ materially from that of the other lots in the neighborhood; neither was there evidence before the Board or the trial court that the physical condition of the Vaneskos' parcel creates a hardship in their ability to develop it according to the applicable zoning code, i.e. construct a single-family residence.

During argument before this Court, the Vaneskos were asked which type of condition (i.e. a condition of area, shape, or slope) applied to their application. The Vaneskos gave two replies. First, they stated that although the ordinances of individual cities governing variances contain language that differs from that in section 211.009 of the local government code, the cases interpreting those ordinances do not "parse these ordinances down" to the pre-

cise requirements set forth in each such ordinance.

This argument is not persuasive. It is an argument that the courts should ignore the language of a city's ordinance governing standard for granting a variance. In the context of the applicable standard of review, it is an assertion that, in determining whether the Board acted "without reference to any guiding rules or principles" or clearly failed to "analyze or apply the law correctly," the courts should ignore the text of the very law that constitutes the "guiding rules or principles" that the Board must analyze, apply, and follow. *See Downer*, 701 S.W.2d at 241–42, *Walker*, 827 S.W.2d at 840.

The Vaneskos gave a second, alternative answer to the question of which type of restrictive condition (i.e., condition of area, shape, or slope) applied to their variance application. They stated that the relevant condition could be construed to be one of area, in that because of the size of the lot, the presence of the existing illegal structure precluded the owners from building another, complying structure. This analysis is incorrect on its face. The Vaneskos' lot has the same area it did before they constructed their house. And as noted above, nothing about the lot's area gives rise to a hardship or difficulty in developing the tract according to its zoning. The Vaneskos' logic would, if followed, lead to the result that a variance should (or at least could) be granted in any situation involving an improved lot, as in almost every case the presence of an existing structure would preclude the landowner from erecting another building.

Second, as noted above, the ordinance governing the Board specifies a variance may not be granted to relieve a hardship that is either self-created or that is personal to the owner, or for financial reasons only. *See* DALLAS, TEX., CITY CODE § 51A–

3.102(d)(10). To satisfy these requirements, the trial court found in finding of fact 5 that the hardship—the inability to construct the house as designed—"was not self-created or personal to the Vaneskos." Similarly, finding of fact 8 states: "The granting of [the Vaneskos'] application for a height variance would not relieve a self-created or personal hardship."[3]

However, it is a maxim that all persons are presumed to know the law. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 528 n. 3 (Tex.1990) (citing *E.H. Stafford Mfg. Co. v. Wichita Sch. Supply Co.*, 118 Tex. 650, 23 S.W.2d 695, 697 (1930)). This presumption includes knowledge of applicable zoning laws. *See City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964) (ignorance of zoning ordinance no defense to suit to enjoin violation). The trial court's findings ignore the fact that the Vaneskos' house, "as designed", violated the height restrictions of the applicable zoning ordinance. Moreover, as the parties stipulated before the trial court, the plan review and approval for which the Vaneskos paid additional money was for the City to determine whether the plans complied with the Construction Code, not the Development (i.e., zoning) Code. The Construction Code Plan Review Waiver stated: "Plan review will still be required for Development Code and may be required for Fire Code, Heath Department Code, Mechanical–Electrical–Plumbing Code or other City Departments." Thus, the record discloses a clear basis for the Board to have denied the application based on the conclusion that the Vaneskos' hardship was, at least in part, self-created.

Moreover, even if the hardship sought to be relieved—the inability to construct the house as designed—was not self-created by the Vaneskos, on its face it is clearly a hardship that is personal to them. It exists, not because of a condition endemic to the parcel of land they happen to own, but because of the circumstances surrounding the City's review of the Vaneskos' construction plans and their failure to tell the Vaneskos that their planned structure was too tall under the applicable zoning classification. This is yet another basis on which the Board could have denied the Vaneskos' application for a variance.

In summary, the Vaneskos' request was not based on a condition involving "a restrictive area, shape, or slope," as required by the Dallas City Code. Although some equities indisputably favor the Vaneskos, the Board could have reached the conclusion that the Vaneskos' hardship was "self-created" and that it was "personal" to the Vaneskos. Thus, the Board's decision to deny the variance was not made "without reference to any guiding rules or principles." *See Downer*, 701 S.W.2d at 241–42. Nor can it be said that the Board "clearly fail[ed] to analyze or apply the law correctly." *See Walker*, 827 S.W.2d at 840. Therefore, I would conclude the trial court erred in holding that the Board abused its discretion in denying the Vaneskos' request for a variance.

To get around the problems that arise from applying the text of section 51A–3.102(d)(10) of the Dallas City Code, the Vaneskos, the trial court, and the majority opinion all place great emphasis on the Corpus Christi court's opinions in *Cantu*

---

**3.** The trial court made no finding with respect to whether the variance was requested for "financial reasons only." The Vaneskos presented evidence at the Board that it would cost at least $50,000 to re-construct the house to comply with the height requirements. At the trial court, the Vaneskos presented evidence that bringing the house into compliance would cost more than $100,000. Nevertheless, I will leave aside any issue as to whether the variance was sought for financial purposes only.

and *McBride*. Indeed, the trial court's judgment reverses the Board's decision and remands the Vaneskos' variance request to the Board "for further proceedings consistent with the holdings of" the Corpus Christi court's opinions in those two cases, and the majority's opinion discusses them at length, describing them as remarkably similar to the case before us.

I agree the fact situations in *Cantu* and *McBride* are similar to the facts here. Both cases affirmed the trial courts' reversals of board decisions to deny variances from building setback restrictions because the cities had reviewed and approved the landowners' building or site plans before construction. *See Cantu*, 52 S.W.3d at 290–91; *McBride*, 676 S.W.2d at 706–07, 709. However, both cases are distinguishable because the ordinances governing the granting of variances in the Town of South Padre Island (in the case of *McBride*) and in the City of Corpus Christi (in the case of *Cantu*) are broader than the Dallas City Code provisions applicable to the Vaneskos' variance request.

The governing ordinance in *McBride* permitted a variance for "other extraordinary and exceptional situations or conditions of such piece of property."[4] The ordinance governing in *Cantu* merely incorporated the provisions of Chapter 211 of the Local Government Code.[5] In turn, Chapter 211 authorizes a board of adjustment to grant a variance "if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is done." TEX. LOC. GOV'T CODE ANN. § 211.009(a)(3) (Vernon 1999). Neither municipality specifically prohibited variances for self-created or personal hard-

---

4. CORPUS CHRISTI, TEX., ZONING ORDINANCE, § 29–5.01 (10th ed.) That provision reads in its entirety as follows:

> Section 29–5 Variances. The Board of Adjustment shall have power to grant the following variances:
>
> 29–5.01 To vary the regulations in any district so as to relieve difficulties or hardships in cases when and where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time for the enactment of such regulation or restriction, or by reason of exceptional topographical conditions or other extraordinary and exceptional situations or conditions of such piece of property, the strict application of each regulation or restriction would result in peculiar and exceptional practical difficulties to, or exceptional hardship upon, the owner of such property. Such grant or variance shall comply, as nearly as possible, in every respect with the spirit, intent, and purpose of the zoning plan; it being the purpose of this provision to authorize the granting of variation only for reasons of demonstrable and exceptional hardship as distinguished from variations sought by applicants for purposes

> or reasons of convenience, profit, or caprice.

The record indicates this was the provision applicable to the parties in *McBride*.

5. According to the record before the trial court, the ordinance applicable to *Cantu* reads:

> Sec. 20–17 Board of adjustment; Appeals.
> There may be a Board of Adjustment appointed by the Board of Aldermen pursuant to Chapter 211 of the Local Government Code, said Board of Adjustment to be governed by, and acting pursuant to, said Law. Said Board of Adjustment may, pursuant to said Law, make special exceptions to the terms of this Ordinance in harmony with its general purposes and intent and in accordance with general or specific rules herein contained. The Board of Adjustment may, pursuant to said Law and bound by the provisions thereof, entertain and decide appeals by any person aggrieved or by any officer, department, board, or bureau of the Town affected by any decision of the administrative officer.

SOUTH PADRE ISLAND, TEX., CODE OF ORDINANCES, § 20–17.

ships, nor did they specify that a variance must be sought to resolve a hardship arising from a restrictive condition relating to the area, shape, or slope of the parcel. Thus, the ordinances governing *McBride* and *Cantu* were significantly broader than the Dallas code provision applicable here, and could be read as authorizing variances where the landowner built on the basis of an erroneously-issued permit. As discussed above, we can construe the Dallas City Code as authorizing a variance under the circumstances here only by largely ignoring its terms.

The Vaneskos' broad reading of *Cantu* and *McBride*, accepted by the majority, would lead to the result that a variance must be granted anytime a city inspector erroneously grants a permit and the owner builds the house in reliance on the permit. In other words, the unauthorized permit creates a variance by estoppel, precluding the city from enforcing its zoning ordinance. However, the law is well-settled that a city cannot be estopped from enforcing its zoning ordinances by the unauthorized acts of its employees in issuing a building permit. *City of Amarillo v. Stapf*, 129 Tex. 81, 101 S.W.2d 229, 232 (1937); *Davis v. City of Abilene*, 250 S.W.2d 685, 688 (Tex.Civ.App.-Eastland 1952, writ ref'd). A building inspector does not have the power or authority to grant a variance by issuing a permit; only the Board has the power to grant variances. *See* TEX. LOC. GOV'T CODE ANN. § 211.009; DALLAS, TEX., CITY CODE § 51A–3.102(d); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 833 (Tex.1970) (city could not by mere resolution amend valid zoning ordinance). While it is unfortunate that the city inspectors issued the building permit improperly, that action, "however unjust and harsh its effect might [be on the property owners,]" cannot estop the City from enforcing its legally valid zoning ordinances. *See Swain v. Bd. of Adjustment of City of Univ. Park*, 433 S.W.2d 727, 732 (Tex.Civ.App.-Dallas 1968, writ ref'd n.r.e.).

### Conclusion

For the reasons detailed above, the record does not clearly show that when the Board denied the Vaneskos' variance request, it acted without reference to any guiding rules or principles or clearly failed to analyze or apply the law correctly. *See Downer*, 701 S.W.2d at 241–42, *Walker*, 827 S.W.2d at 840. Even if we would reach a different outcome, the courts should not disturb the Board's exercise of its discretion in deciding whether to grant the Vaneskos' request. Thus, I would hold that the trial court erred in issuing findings of fact 5, 7, and 8.[6] I would hold that the trial court erred in concluding that the Board abused its discretion in denying the variance, and in entering a judgment reversing the Board's decision and remanding the case for further proceedings consistent with *Cantu* and *McBride*. Thus, I would reverse the judgment of the trial court and enter judgment affirming the ruling of the Board.

---

**6.** Based on these findings, I would not need to address whether the trial court erred in entering finding of fact 6. *See* TEX.R.APP. P.

47.1. Were I to reach this issue, however, I would find that the trial court did not err in entering this finding.