**SOUTHWEST PAPER STOCK, INC., Appellant,**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF FORT WORTH, Appellee.**

No. 2–97–274–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 24, 1998.

Rehearing Overruled Nov. 12, 1998.

803

Bourland, Kirkman, Seidler & Evans, David Evans, Thomas Michel, Fort Worth, for Appellant.

Theodore P. Gorski, Jr., Marcella Olson, City Attorney's Office, Fort Worth, for Appellee.

Before DAY, LIVINGSTON and BRIGHAM, JJ.

## OPINION

DAY, Justice.

The sole issue in this case is whether the Board of Adjustment ("Board") of the City of Fort Worth established as a matter of law that it did not abuse its discretion in denying Appellant Southwest Paper Stock, Inc.'s ("Southwest") applications for special exceptions to recycle glass, aluminum, and wood. After the Board denied its request, Southwest petitioned for review by writ of certiorari in the district court. The Board filed a return and moved for summary judgment, which the district court granted. On appeal, Southwest brings four points, alleging that summary judgment was improper because the city's zoning ordinance imposed a legal duty on the Board and the Board failed to show as a matter of law that it did not abuse its discretion in denying Southwest's applications for special exceptions.

Because the Board's summary judgment evidence conclusively established that it did not abuse its discretion, we affirm.

## BACKGROUND

In 1983, the Board granted a special exception to allow Southwest to recycle paper at 400 West Jessamine in Fort Worth. Nine years later, the Board granted a second special exception to allow Southwest to expand its paper recycling facility to 208 West Jessamine.

At some point, the City of Fort Worth Code Enforcement Division began issuing citations against Southwest for recycling materials other than paper without a special exception. In June 1993, Southwest filed an application for a special exception to recycle glass, aluminum cans, and wood products at its 400 West Jessamine facility. At Southwest's request, the Board continued the hearing on that application until September 1993 to give Southwest time to file an application

for its location at 208 West Jessamine so the cases could be heard together. Thereafter, the cases were continued two more times. The Board approved Southwest's request for a continuance from September 1993 to December 1993 so Southwest could address concerns raised by the city and neighboring property owners about its recycling operations. Southwest, the city, and citizens who opposed the exceptions agreed to continue the cases again to January 5, 1994 so Southwest could continue working on the city's concerns and issues raised by neighboring property owners.

At the January 5, 1994 hearing, Southwest did not present evidence or argument regarding the merits of its applications, nor did it ask the Board to approve its request for special exceptions.[1] Instead, Southwest sought a fourth continuance or, in the alternative, requested a denial without prejudice.

Five individuals spoke at the hearing against the applications and expressed concern about litter, odor, broken glass, rodents, and potential fire hazards caused by Southwest's current recycling operations, including those in violation of the city zoning ordinance. The Board also heard testimony from a city staff member that Southwest had failed to address adverse effects caused by its current recycling operations. The staff member advised the Board that Southwest had made little progress in resolving the City Services Department's concerns, even though Southwest had repeatedly requested and received continuances for that purpose.

At the conclusion of the hearing, the Board denied Southwest's applications for special exceptions with prejudice. Southwest thereafter sought review of the Board's decision in district court by writ of certiorari. The writ issued, and the Board filed a return. The Board also filed a motion for summary judgment, alleging that (1) it did not abuse its

---

1. Southwest's representative stated at the hearing:

> I'm not here to ask you to approve this case today. I'm here to ask for a postponement. I haven't even presented a case to you. The only comments I have made are directed toward postponement.... The question of approving this case today to me is out of the question and

> I wouldn't even insult your intelligence by asking you to do that because you do not have all the staff information that you need before you, and I think that my letter clarifies that with all of the exhibits that I have responded to. I think you can see that we need to provide this Board with more information, and that's precisely what we're trying to do....

discretion in refusing to grant the exceptions and (2) the zoning ordinance requires, as a matter of law, that Southwest obtain a special exception before recycling wood, glass, or aluminum products. The district court granted the Board's motion for summary judgment and found, among other things, that the Board's decision to deny Southwest's applications for special exceptions was legal and not an abuse of discretion as a matter of law and that a special exception was required to recycle glass, aluminum cans, and wood under the Fort Worth zoning ordinance.

On appeal, Southwest raises four points, alleging that the trial court erred in granting summary judgment because (1) the Board failed to show as a matter of law that it did not abuse its discretion in denying Southwest's applications for special exceptions, (2) the Board's motion for summary judgment shows on its face that the Board abused its discretion by basing its denial on improper evidence, (3) the Board's motion for summary judgment shows on its face that the Board abused its discretion because it was required to grant the exceptions and prescribe requirements necessary to protect the stability of the adjacent property, and (4) the Board failed to show as a matter of law that glass, aluminum, and wood products were "junk" as defined by the ordinance.

## STANDARDS OF REVIEW

### A. Review of the Board's Decision

■ Under section 211.011 of the local government code, the Texas Legislature has expressly provided a means for challenging an action taken by a city's zoning board of adjustment. TEX. LOC. GOV'T CODE ANN. § 211.011 (Vernon 1988 & Supp.1998). This statute provides that a person aggrieved by a zoning board's action may petition a court of record for a writ of certiorari within ten days after the board's decision is filed. *See id.* § 211.011(a), (b). The district court sits only as a court of review, and the only question that may be raised by a petition for writ of certiorari is the legality of the board's order. *See id.* § 211.011(a); *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67, 70 (1945); *West Tex. Water Refiners, Inc. v. S & B Beverage Co.,* 915 S.W.2d 623, 626

(Tex.App.—El Paso 1996, no writ); *Board of Adjustment of Corpus Christi v. Flores,* 860 S.W.2d 622, 625–26 (Tex.App.—Corpus Christi 1993, writ denied). The legality of the board's decision to deny a special exception is a question of law. *See Boehme Bakery,* 190 S.W.2d at 70; *Board of Adjustment of Dallas v. Patel,* 882 S.W.2d 87, 88 (Tex. App.—Amarillo 1994, writ denied). The board's decision is presumed to be legal, and a party attacking it bears the burden of establishing that the Board clearly abused its discretion. *See Boehme Bakery,* 190 S.W.2d at 70; *Nu–Way Emulsions Inc. v. City of Dalworthington Gardens,* 617 S.W.2d 188, 189 (Tex.1981); *S & B Beverage,* 915 S.W.2d at 626.

■ The test for abuse of discretion is whether a board acted "without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *see Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In determining whether a board abused its discretion, the district court may consider the board's verified return along with evidence introduced in the trial court. *See* TEX. LOC. GOV'T CODE ANN. § 211.011(e); *Boehme Bakery,* 190 S.W.2d at 70. However, it may not put itself in the position of the board and substitute its wisdom, judgment, and discretion for that of the board. *See Boehme Bakery,* 190 S.W.2d at 70. This is so even if the trial court concluded that the overwhelming preponderance of the evidence was against the board's decision. *See id.; Flores,* 860 S.W.2d at 625; *Murmur Corp. v. Board of Adjustment of Dallas,* 718 S.W.2d 790, 799 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Currey v. Kimple,* 577 S.W.2d 508, 512 (Tex. Civ.App.—Texarkana 1978, writ ref'd n.r.e.). The board does not abuse its discretion by basing its decision on conflicting evidence. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *Kirkpatrick v. Memorial Hosp. of Garland,* 862 S.W.2d 762, 776 (Tex.App.— Dallas 1993, writ denied). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative

character exists to support the board's decision. *See Texas Dep't of Health v. Buckner*, 950 S.W.2d 216, 218 (Tex.App.—Fort Worth 1997, no writ); *Wilemon v. Wilemon*, 930 S.W.2d 290, 294 (Tex.App.—Waco 1996, no writ); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

## B. Summary Judgment

The issue of whether the Board abused its discretion is a question of law appropriately determined by summary judgment. *See Board of Adjustment of Piney Point Village v. Amelang*, 737 S.W.2d 405, 407 (Tex.App.—Houston [14th Dist.] 1987, writ denied). The standards for reviewing a motion for summary judgment are well established. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See Clear Creek Basin*, 589 S.W.2d at 678.

In the instant case, we must determine whether the Board established as a matter of law that it did not abuse its discretion. In other words, if there was some evidence of substantive and probative character that supported the Board's decision, it did not abuse its discretion and summary judgment was proper.

## AUTHORITY TO GRANT SPECIAL EXCEPTIONS

■ Section 211.008 of the local government code authorizes the governing body of a municipality to appoint a board of adjustment that may:

[I]n appropriate cases and subject to appropriate conditions and safeguards ... make special exceptions to the terms of the zoning ordinance that are consistent with the general purpose and intent of the ordinance and in accordance with any applicable rules contained in the ordinance.

TEX. LOC. GOV'T CODE ANN. § 211.008(a) (Vernon 1988). The power to grant special exceptions is exclusively derived from statute, *see id.* § 211.009(a)(2), and the board may not grant exceptions that are not expressly provided for in the ordinance. *See S & B Beverage*, 915 S.W.2d at 627; *Driskell v. Board of Adjustment*, 195 S.W.2d 594, 599 (Tex.Civ.App.—Fort Worth 1946, writ ref'd n.r.e.); *Harrington v. Board of Adjustment of Alamo Heights*, 124 S.W.2d 401, 404–05 (Tex.Civ.App.—Amarillo 1939, writ ref'd).

The Fort Worth City Council adopted the city's zoning ordinance in 1962. *See* FORT WORTH, TEX., CITY CODE app. A (1986). The ordinance creates various districts for distinct land uses. In the "K" Heavy Industrial District, thirty-five specified uses are permitted as a matter of right. *See id.* § 15(A)(1)-(35). However, the zoning ordinance provides that no building or occupancy permit will be issued for thirty-two other enumerated uses unless the location is approved for those uses by the Board after a report from the fire, health, and public works departments. *See id.* § 15(A)(36). One of the uses that must be approved by the Board is "storage, salvaging, sorting, processing, or baling of rags, iron, scrap paper or junk." *Id.* § 15(A)(36)(29). "Junk" is defined in Section 1 of the zoning ordinance as:

[S]crap iron, scrap tin, scrap brass, scrap copper, scrap lead or scrap zinc and all other scrap metals and their alloys, and bones, rags, used cloth, used rubber, used rope, used tinfoil, used bottles, old cotton or used machinery, used tools, used appliances, used fixtures, used utensils, used boxes or crates, used pipe or pipe fittings, used automobile or airplane tires, and other manufactured goods that are so worn, deteriorated or obsolete as to make them unusable in their existing condition, subject to being dismantled for junk.

*See id.* § 1(28).

Section 20 of the zoning ordinance permits the Board to grant special exceptions "when such use or development is specifically authorized under the zoning ordinance subject to the approval of the board." *Id.* § 20(B)(2). However, the Board may only

grant an application for a special exception *if* it determines that:

> [T]he requested exception will establish only those uses permitted under the ordinance; ... the location of the proposed activities and improvements are clearly defined on the site plan filed by the applicant; [and] ... the exception will be wholly compatible with the use and permitted development of adjacent property either as filed or subject to such requirements as the [B]oard finds to be necessary to protect and maintain the stability of adjacent properties.

*See id.*

In this case, Southwest contends that no special exception is required to recycle glass, aluminum, and wood products in the city's "K" district. In the alternative, Southwest argues that the Board had no discretion to reject its applications, and that the Board based its decision on improper evidence. We turn first to Southwest's complaint about the evidence relied on by the Board.

### ANALYSIS

In its second point, Southwest contends that the Board had no authority to consider the testimony of neighboring property owners in reaching its decision, but was instead limited to considering only the reports of city staff. Specifically, Southwest argues that the Board abused its discretion because it relied on the testimony of neighbors who were not "adjacent" property owners [2] to determine that Southwest's proposed exceptions were incompatible with the neighboring land uses. However, Southwest offers no authority in support of its contention and, as the Board correctly notes, Southwest's position is inconsistent with the clear mandate of the local government code. Sections 211.008 through 211.011 govern boards of adjustment and clearly contemplate public involvement. TEX. LOC. GOV'T CODE ANN. §§ 211.008–.011. Furthermore, under section 20(B) of the Fort Worth zoning ordinance,

an important factor in determining whether a special exception should be granted is whether the use sought is compatible with surrounding land uses. FORT WORTH, TEX., CITY CODE app. A, § 20(B)(2). The Board may properly consider the testimony of concerned citizens in reaching this determination. *See Zoning Board of Adjustment of El Paso v. Knapp,* 618 S.W.2d 137, 141 (Tex. Civ.App.—El Paso 1981, no writ.) (noting that citizens' testimony provided substantial evidence for Board to deny special exception). In addition, a representative of the city staff testified that Southwest had not adequately addressed problems caused by its existing operations. Thus, even if we accepted Southwest's argument and excluded the testimony of the neighboring property owners, there was still other evidence before the Board to support its decision. We overrule Southwest's second point.

In its third point, Southwest contends that the Board abused its discretion because it had a legal duty to grant the applications, subject only to appropriate conditions to protect the stability of the adjacent property. In other words, Southwest contends that the Board had no discretion to do anything but grant its applications. We disagree. If Southwest's assertion was correct, businesses in the "K" district could establish any (or all) of the thirty-two enumerated land uses that require Board approval merely by applying for a permit, no matter how incompatible the proposed use was with the adjacent property. Under Southwest's theory, the Board would be charged with the weighty responsibility of devising a method that would allow every applicant to conduct any of the thirty-two uses in a manner that was consistent with neighboring land uses. Common logic dictates that there would be times when an applicant's proposed use would be wholly incompatible with the adjacent property use. In those cases, the zoning ordinance clearly *prohibits* the Board

---

2. "Adjacent" is defined as "[l]ying near or close to; sometimes, contiguous; neighboring." BLACK'S LAW DICTIONARY 41 (6th ed.1990). Three of the residents who testified at the hearing lived on the street across the railroad tracks from Southwest's property. These individuals clearly quali-

fy as "adjacent" landowners. To the extent Southwest contends that the testimony was inadmissible because the residents' property did not touch Southwest's boundaries and was not in the "K" district, that argument is without merit.

from granting a special exception. *See* FORT WORTH, TEX., CITY CODE app. A, § 20(B)(2) (providing that special exception must be "wholly compatible" with use and development of adjacent property).

In addition, the plain language of section 211.008(a) of the local government code dictates that a zoning board's authority to grant special exceptions is discretionary, not mandatory. *See* TEX. LOC. GOVT.CODE ANN. § 211.008(a) (providing that board may make special exceptions to zoning ordinance in appropriate cases); *see also Kleck v. Zoning Board of Adjustment*, 319 S.W.2d 406, 407 (Tex.Civ.App.—San Antonio 1958, writ ref'd) (construing TEX.REV.CIV. STAT. art. 1011g (Vernon 1963), now codified at TEX. LOC. GOV'T CODE ANN. § 211.008(a) (Vernon Supp. 1998)). Contrary to Southwest's assertions, the Board has no "legal duty" to authorize every application for a special exception that it receives. We overrule Southwest's third point.

In its fourth point, Southwest alleges that the trial court erred in granting summary judgment because there was no testimony at the hearing that glass, aluminum, or wood products were "junk." As a result, it contends the Board failed to establish as a matter of law that a special exception was required to recycle glass, aluminum, and wood products. This contention is without merit.

As noted above, section 15 of the Comprehensive Zoning Ordinance provides that one of the uses that must be approved by the Board is "storage, salvaging, sorting, processing, or bailing of rags, iron, scrap paper or junk." "Junk" includes all scrap metals (aluminum cans), used bottles (glass), and used boxes or crates (wood). *See* FORT WORTH, TEX., CITY CODE app. A, § 1(28). Requiring Southwest to obtain a special exception to recycle glass, aluminum, and wood products is consistent with the plain meaning of section 15. We overrule Southwest's fourth point.

Finally, Southwest contends in its first point that the Board failed to show as a matter of law that it did not abuse its discretion in denying Southwest's applications for special exceptions. As stated above, the Board did not abuse its discretion as long as its decision was supported by some evidence of substantive and probative character. *See Buckner*, 950 S.W.2d at 218; *Wilemon*, 930 S.W.2d at 294.

In this case, the summary judgment evidence offered by the Board included a verified copy of the minutes from the hearing on Southwest's application. Three residents who lived on the street across from the recycling plant testified at the hearing against the requested exceptions. These individuals said that Southwest had repeatedly failed to clean up its operations to make its existence compatible with the nearby residential neighborhood. They also testified that broken bottles, cans, and paper from the facility littered their street and yards. There was also testimony that problems caused by the Southwest facility had decreased property values in the neighborhood. In addition, a representative of the Fort Worth city staff department testified that Southwest had made little progress in addressing the department's concerns about adverse effects caused by Southwest's operations.

As noted previously, the Board may not grant a special exception unless it determines that the proposed use is compatible with the use of the neighboring property. *See* FORT WORTH, TEX., CITY CODE app. A, § 20(B)(2). In this case, the testimony offered by local residents and the city staff during the January 5 hearing was some evidence of substantive and probative character that Southwest's requested special exceptions were not wholly compatible with the use and permitted development of adjacent properties. We thus hold that the summary judgment evidence established as a matter of law that the Board did not abuse its discretion in denying the special exceptions. We overrule Southwest's first point.

## CONCLUSION

In this case, we find that there was some probative and substantive evidence to support the Board's decision. The evidence indicates that the Board acted in accordance with guiding rules and principles, including consideration of the incompatibilities of the

proposed exceptions with the surrounding properties and Southwest's failure to address concerns about its existing property use. As a result, we hold that the Board's summary judgment evidence established as a matter of law that it did not abuse its discretion in denying Southwest's applications for special exceptions. Furthermore, we also find that the Board was not required to grant the applications and that it could properly consider the testimony of nearby property owners in making its decision. Finally, we find that the plain meaning of the ordinance required Southwest to obtain a special exception to recycle wood, aluminum, and glass products. We overrule Southwest's points on appeal and affirm the trial court's summary judgment.