COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                        NO.
2-08-294-CV

 

ABDER EL HAMAD                                                              APPELLANT

 

                                                   V.

 

COMMERCIAL
BOARD OF                                                        APPELLEE

ADJUSTMENT, A DIVISION OF


THE ZONING BOARD OF 

ADJUSTMENT OF THE 

CITY OF FORT WORTH

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In four issues, Appellant Abder El Hamad appeals
the summary judgment granted in favor of Appellee Commercial Board of
Adjustment, a Division of the Zoning Board of Adjustment of the City of Fort
Worth (the ABoard@).  We affirm.








II. 
Factual and Procedural History

El Hamad owns three adjacent pieces of real
property (the AProperty@) in the
City of Fort Worth (the ACity@).  The Property is zoned AI@ (Light
Industrial).  On this Property, he
operates what he refers to as Aan
automotive recycling facility@ and
what the Board refers to as a Amotor
vehicle junkyard@ (hereinafter Athe
Business@).  The parties do not dispute that, for the
Business to operate on the Property, El Hamad must secure a special exception.[2]








In January 2006, the Board granted a one-year
extension of the special exception instead of the two-year extension El Hamad
had applied for, with a stipulation that cars could not be stacked above the
height of the fence.[3]  One of the board members moved to approve the
request for two years to give El Hamad time to move out of the neighborhood,
but that motion failed to carry.








In January 2007, the Board granted a six-month
extension of the special exceptionCto close
the BusinessCand again required that no
vehicles be stacked above the fence or be located outside of the fence.  El Hamad had first sought an additional
two-year extension of the special exception and then reduced his request to a
one-year extension, stating that he had talked with the people that lived in
the area and that they were willing Ato say
they will compromise for one more year with [him].@[4]  He informed the Board that it would take him
that long to close up the Business, but when asked by a board member how long
it would take to shut down his operation if he did not get the extension, he
also stated, AI don=t
know.  Maybe a couple of months.@








In September 2007, the Board denied El Hamad=s
request for a two-year extension of the special exception.[5]  El Hamad filed an original petition and writ
of certiorari in the trial court, protesting this denial, attributing it to the
Asubstantial
neighborhood  opposition@ of
people seeking to make the area more residential, alleging that the Board had
exceeded its authority by improperly attempting to rezone the area on the basis
of political pressure, and asserting that he was unfairly treated because Athe
Board has recently granted extensions of ten (10) years to similar activities
in the surrounding area.@ 
See Tex. Loc. Gov=t Code
Ann. ' 211.011
(Vernon 2008); see also Sw. Paper Stock, Inc. v. Zoning Bd. of Adjustment
of City of Fort Worth, 980 S.W.2d 802, 805 (Tex. App.CFort
Worth 1998, pet. denied) (explaining procedure under section 211.011 for
challenging action by board of adjustment).








The Board filed a verified return with its motion
for summary judgment, including the transcripts of the Board=s
hearings on all three of El Hamad=s
applications, and it filed objections to the affidavit El Hamad relied upon in
his response to the Board=s motion for summary
judgment.  The Board also included with
its objections an affidavit by Dana Burghdoff, the Board=s
executive secretary and a deputy director in the City=s planning
and development department, which El Hamad did not object to.  Burghdoff stated (with attached supporting
documents) that the two businesses in the area that received ten-year
extensions had different zoning (K-zoning) than El Hamad=s
Property, that property zoned AK@ allows
for ten-year extensions, and that property zoned AI@ does
not.[6]  The trial court sustained the Board=s
objections to El Hamad=s affidavit, and it granted the
Board=s motion
for summary judgment.  This appeal
followed.

III.  El
Hamad=s Issues








El Hamad argues that the Board=s
summary judgment had no legitimate support on either the facts or the law and
that the denial of his requested special exception was an improper action that
arbitrarily reversed the Board=s prior
decisions and created Aa new policy/legislation with
regards to the proper zoning in this area, far beyond its grant of authority
under State law.@ 
In his first three issues, he specifically complains that he should not
have been denied a special exception because: 
(1) the trial court applied the incorrect standard of review to his writ
of certiorari appealing the denial of his special exception; (2) the Board=s
actions were improper because they were essentially legislative in nature,
thereby breaching the statutory framework limiting the methods by which zoning
may be changed; and (3) the Board=s
actions were arbitrary and capricious because the use in question had not
changed, it was a conforming use, the Board had granted numerous extensions for
the use and similar activities, and the denial was triggered by political
protests.[7]  In his fourth issue, he complains that the
trial court erred by excluding Avarious
items@ in his
affidavit.

IV. 
Discussion

A.  Standard of Review

The appropriate standard of review with regard to
a board of adjustment=s order is Awhether
the board of adjustment has abused its discretion, i.e., whether it has acted
without reference to guiding rules and principles or whether it has acted
arbitrarily and unreasonably.@  W. Tex. Water Refiners v. S & B
Beverage Co., 915 S.W.2d 623, 626 (Tex. App.CEl Paso
1996, no writ).








A board=s order
carries the presumption of legality, and the party attacking it bears the
burden of establishing its illegality.  Id.;
see also Pick-N-Pull Auto Dismantlers v. Zoning Bd. of Adjustment of City of
Fort Worth, 45 S.W.3d 337, 339B40 (Tex.
App.CFort
Worth 2001, pet. denied).

The issue of whether a board abused its
discretion is a question of law appropriately determined by summary
judgment.  Pick-N-Pull Auto, 45
S.W.3d at 340.  In a summary judgment
case, the issue on appeal is whether the movant met the summary judgment burden
by establishing that no genuine issue of material fact exists and that the
movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec. Power
Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.  Here, we must
determine whether the Board proved as a matter of law that it did not abuse its
discretionCthat is, if there is some
evidence of substantive and probative character supporting the Board=s
decision, the trial court did not abuse its discretion by granting the Board=s motion
for summary judgment.  See Pick-N-Pull
Auto, 45 S.W.3d at 340.








B.  Analysis

In Pick-N-Pull, this court concluded that
the board, as factfinder, did not abuse its discretion by denying a special
exception sought by an automobile dismantling business in light of conflicting
evidence presented by the business (that it would be a good neighbor) and by
its neighbors (letters expressing compatibility concerns).  Id. at 340B41.








Having reviewed the entire record, we conclude,
as we did in Pick-N-Pull, that as a matter of law the Board, as
factfinder, did not abuse its discretion by denying El Hamad=s
special exception when it denied an extension of the special exception after
considering both El Hamad=s testimony (that the Business
was a good neighbor) and that of his neighbors (that the Business was no longer
compatible with the surrounding area).[8]  See id.; see also Sw. Paper
Stock, 980 S.W.2d at 808 (A[T]he
Board may not grant a special exception unless it determines that the proposed
use is compatible with the use of the neighboring property.@).








Furthermore, we cannot say that the trial court
abused its discretion by sustaining the Board=s
objections to El Hamad=s affidavit.  See In re J.P.B., 180 S.W.3d 570, 575
(Tex. 2005) (AWe review a trial court=s
decision to admit or exclude evidence for an abuse of discretion.@).  Given that the summary judgment issue before
the trial court was whether the Board abused its discretion by denying El Hamad=s
special exception application based on compatibility, we cannot say that
the trial court abused its discretion by sustaining the Board=s
relevance objections to El Hamad=s
statements about compliance, to his allegations about the two similar
nearby businesses (the two K-zoned businesses) receiving ten-year extensions on
their special exceptions, or to his other statements that essentially
duplicated the hearing testimony.[9]








Finally, to the extent that we have not addressed
all of El Hamad=s arguments, we overrule them as
inadequately briefed.[10]  See Tex. R. App. P. 38.1(i); Fredonia
State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284B85 (Tex.
1994) (discussing Along-standing rule@ that point
may be waived due to inadequate briefing). 

For the foregoing reasons, we overrule El Hamad=s four
issues.

V. 
Conclusion

Having overruled El Hamad=s four
issues, we affirm the trial court=s
judgment.

 

BOB
MCCOY

JUSTICE

PANEL: CAYCE, C.J.; MCCOY and MEIER, JJ.

DELIVERED: May 14, 2009











[1]See Tex. R. App. P. 47.4.





[2]Section 5.141 (AVehicle Junkyard@) of the City=s zoning ordinance
provides as follows:

 

The Board of Adjustment
shall receive a report from appropriate City departments when considering a
special exception.

 

. . . .

 

B.     In the AI@ or AJ@ District

A motor vehicle junkyard
or used automobile junk area may be permitted as a special exception.  The special exception shall be subject to the
following conditions.

1. The junkyard or area
shall not adjoin any residential district.

2. The junkyard or area must
be completely enclosed by a six-foot screening fence.

3. Special exception
approvals shall be limited to the following period of time.  Extensions of time shall each be subject to
the same application, report and hearing procedures as the original approval.

a. First approval B a period not to exceed
five years;

b. First extension B a period not to exceed
three years; and

c. Each subsequent
extension B a period not to exceed
two years.

 

Fort
Worth, Tex., City Code app. A., Ord. 13896 ' 5.141 (2009), available
at http://www.municode.com/resources/gateway.asp?pid=10009&ekmensel=c582fa7b_21_o_btnlink.





[3]At the January 2006
hearing, the chairperson of the Morningside Neighborhood Association spoke in
opposition to the special exception, claiming that the Business was not
compatible with new economic development occurring south of the Property.  One of the board members noted that the
comprehensive plan for the area showed that the use was compatible, but
observed, Aprobably[] building these
new homes has happened since [our last] comprehensive plan.@  Another opponent, the president of the
Glencrest Civic League (and also a board member of the United Communities
Association) spoke against the special exception, stating that the stretch of
Riverside Drive where the Property was located Aserves as a major entry
point into several existing neighborhoods.@





[4]El Hamad stated, A[T]here is about five or
six junkyards in the area on the same street in about a two or three mile
radius. . . . [B]ut there is a lot of new homes also being built in that
neighborhood and a lot of improvements. . . .  I=m willing to compromise with, you know, the
community and the churches and everybody.@  A board
member with the United Neighborhood Association of South Fort Worth (who was
also past president of the Glencrest Civic League) indicated that he wanted
some sort of assurance that the Business would shut down after a year, and a
Morningside Neighborhood Association member stated that the Business presented
a health hazard to neighboring residential areas.





[5]A member of the
Morningside Neighborhood Association spoke against the extension of the special
exception, stating that a junkyard did not fit in with the community
revitalization and Aasking this be the last
time that we have to continue to come before you to shut this type of business
down in our community.@  A member of the steering committee of the
Southwest Weed and Seed (a federally funded crime prevention and intervention program),
who was also on the Board of Directors of Southeast Fort Worth, Incorporated,
stated that El Hamad had never approached either of those organizations.  In response to a Board member=s question about whether
El Hamad could live with a period shorter than two years, El Hamad=s counsel stated, AMy client can certainly
live with whatever the board proceeds with. 
And if there are development plans ongoing for this area, that may make
sense.@  He gave the Board an update on the status of
the residential development to the south of the Property, stating that fifteen
to twenty homes had already been constructed and that he thought people were
already living in a few of them.





[6]See also Fort Worth, Tex., City Code app. A., Ord. 13896 ' 5.141(C) (stating that in the AK@ district, the first
approval of a special exception shall be limited to a period not to exceed ten
years and each subsequent extension shall also not exceed ten years).  El Hamad=s counsel at the September 2007 hearing
demonstrated his awareness of the zoning differences, noting,

 

[W]hat struck me about this case was the adjacent property which is up
here, this Action Auto [another junkyard]. 
It is in a different zoning district. 
It=s in K.  It came before this board in 2004 and
received an exceptional variance [sic] for 10 years.  The property next door, the neighbor, if you
will, is Mr. Hamad=s property.  It=s in AI,@ but it operates the same type of business.





[7]The Board rephrases El
Hamad=s first three issues as, A[T]he Board abuse[d] its
discretion when it denied him a third request within twenty months for a special
exception to operate a motor-vehicle junkyard.@





[8]Based on the record
before us, we cannot agree with El Hamad=s statement in his brief that, 

 

The Board itself had
previously imposed standards on this business and similar businesses in the
area so the issue of incompatibility had been previously used and addressed and
found to be something which could be resolved by certain ameliorating
activities rather than this sudden change to simply deny the
possibility of having such activities because of political pressure and a wish
to change the fundamental issues of land use and thereby thwart the rules
imposed by the City Council and the Legislature. [Emphasis added.]

 

Before the vote in September 2007, one of the
Board members made the following comments in response to El Hamad=s counsel=s Acomment about the other
businesses in the neighborhood and how long they have to go on their permits,@ stating that the
Property 

 

is immediately north of
that residential development to the south. 
The others, as I understand it, are further to the north, north of your
client=s property, and they . .
. are not abutting or adjoining the residential development.

 

So because this one does abut the
residential development as I understand it, I will not support the motion to
grant even a one-year extension.





[9]In response to El Hamad=s statement that his
position was not substantially different Aat all@ from the position he took at the hearing, the
trial court asked, AWhy should I consider it
when I=ve got the transcript of
the hearing?@





[10]An appellate court is not
required to search the appellate record, with no guidance from the briefing
party, to determine if the record supports the party=s argument.  See Hall v. Stephenson, 919 S.W.2d
454, 466B67 (Tex. App.CFort Worth 1996, writ
denied).  Furthermore, Awe know of no authority
obligating us to become advocates for a particular litigant through performing
their research and developing their argument for them.@  Tello v. Bank One, N.A., 218 S.W.3d
109, 116 (Tex. App.CHouston [14th Dist.]
2007, no pet.) (internal quotation omitted). 
Thus, inadequately briefed issues may be waived on appeal.  Hall, 919 S.W.2d at 467.

 

Although El
Hamad presents four issues for our review, he cites only one caseCWest Texas Water RefinersCand only in the
discussion of his first issue, for the proposition that the Board may not
impose more terms or change anything other than simply determining
compatibility.  915 S.W.2d at 626.  We note that the Board did not impose any
terms or conditions when it denied El Hamed=s application in September 2007Cthe only order from which
El Hamed appealed first to the trial court, and now to this court.  El Hamad also makes passing references to
local government code sections 211.008 through 211.011 in his first issue and
to the Fourth and Fourteenth Amendments to the United States Constitution in
his third issue, but it is unclear how these provisions support his arguments.