

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-294-CV

ABDER EL HAMAD                                         APPELLANT

V.

COMMERCIAL BOARD OF                                    APPELLEE
ADJUSTMENT, A DIVISION OF
THE ZONING BOARD OF
ADJUSTMENT OF THE
CITY OF FORT WORTH

------------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In four issues, Appellant Abder El Hamad appeals the summary judgment granted in favor of Appellee Commercial Board of Adjustment, a Division of the Zoning Board of Adjustment of the City of Fort Worth (the "Board").  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

El Hamad owns three adjacent pieces of real property (the "Property") in the City of Fort Worth (the "City"). The Property is zoned "I" (Light Industrial). On this Property, he operates what he refers to as "an automotive recycling facility" and what the Board refers to as a "motor vehicle junkyard" (hereinafter "the Business"). The parties do not dispute that, for the Business to operate on the Property, El Hamad must secure a special exception.[2]

---

[2] Section 5.141 ("Vehicle Junkyard") of the City's zoning ordinance provides as follows:

> The Board of Adjustment shall receive a report from appropriate City departments when considering a special exception.
>
> . . . .
>
> B.    In the "I" or "J" District
> A motor vehicle junkyard or used automobile junk area may be permitted as a special exception. The special exception shall be subject to the following conditions.
>     1. The junkyard or area shall not adjoin any residential district.
>     2. The junkyard or area must be completely enclosed by a six-foot screening fence.
>     3. Special exception approvals shall be limited to the following period of time. Extensions of time shall each be subject to the same application, report and hearing procedures as the original approval.
>         a. First approval – a period not to exceed five years;
>         b. First extension – a period not to exceed three years; and
>         c. Each subsequent extension – a period not to exceed

In January 2006, the Board granted a one-year extension of the special exception instead of the two-year extension El Hamad had applied for, with a stipulation that cars could not be stacked above the height of the fence.[3] One of the board members moved to approve the request for two years to give El Hamad time to move out of the neighborhood, but that motion failed to carry.

In January 2007, the Board granted a six-month extension of the special exception—to close the Business—and again required that no vehicles be stacked above the fence or be located outside of the fence. El Hamad had first sought an additional two-year extension of the special exception and then reduced his request to a one-year extension, stating that he had talked with the people that lived in the area and that they were willing "to say they will

two years.

FORT WORTH, TEX., CITY CODE app. A., ORD. 13896 § 5.141 (2009), *available at* http://www.municode.com/resources/gateway.asp?pid=10009&ekmensel= c582fa7b_21_o_btnlink.

[3] At the January 2006 hearing, the chairperson of the Morningside Neighborhood Association spoke in opposition to the special exception, claiming that the Business was not compatible with new economic development occurring south of the Property. One of the board members noted that the comprehensive plan for the area showed that the use was compatible, but observed, "probably[] building these new homes has happened since [our last] comprehensive plan." Another opponent, the president of the Glencrest Civic League (and also a board member of the United Communities Association) spoke against the special exception, stating that the stretch of Riverside Drive where the Property was located "serves as a major entry point into several existing neighborhoods."

compromise for one more year with [him]."[4]  He informed the Board that it would take him that long to close up the Business, but when asked by a board member how long it would take to shut down his operation if he did not get the extension, he also stated, "I don't know.  Maybe a couple of months."

In September 2007, the Board denied El Hamad's request for a two-year extension of the special exception.[5]  El Hamad filed an original petition and writ

---

[4] El Hamad stated, "[T]here is about five or six junkyards in the area on the same street in about a two or three mile radius. . . . [B]ut there is a lot of new homes also being built in that neighborhood and a lot of improvements. . . .  I'm willing to compromise with, you know, the community and the churches and everybody."  A board member with the United Neighborhood Association of South Fort Worth (who was also past president of the Glencrest Civic League) indicated that he wanted some sort of assurance that the Business would shut down after a year, and a Morningside Neighborhood Association member stated that the Business presented a health hazard to neighboring residential areas.

[5] A member of the Morningside Neighborhood Association spoke against the extension of the special exception, stating that a junkyard did not fit in with the community revitalization and "asking this be the last time that we have to continue to come before you to shut this type of business down in our community."  A member of the steering committee of the Southwest Weed and Seed (a federally funded crime prevention and intervention program), who was also on the Board of Directors of Southeast Fort Worth, Incorporated, stated that El Hamad had never approached either of those organizations.  In response to a Board member's question about whether El Hamad could live with a period shorter than two years, El Hamad's counsel stated, "My client can certainly live with whatever the board proceeds with.  And if there are development plans ongoing for this area, that may make sense."  He gave the Board an update on the status of the residential development to the south of the Property, stating that fifteen to twenty homes had already been constructed and that he thought people were already living in a few of them.

of certiorari in the trial court, protesting this denial, attributing it to the "substantial neighborhood opposition" of people seeking to make the area more residential, alleging that the Board had exceeded its authority by improperly attempting to rezone the area on the basis of political pressure, and asserting that he was unfairly treated because "the Board has recently granted extensions of ten (10) years to similar activities in the surrounding area." *See* Tex. Loc. Gov't Code Ann. § 211.011 (Vernon 2008); *see also Sw. Paper Stock, Inc. v. Zoning Bd. of Adjustment of City of Fort Worth*, 980 S.W.2d 802, 805 (Tex. App.—Fort Worth 1998, pet. denied) (explaining procedure under section 211.011 for challenging action by board of adjustment).

The Board filed a verified return with its motion for summary judgment, including the transcripts of the Board's hearings on all three of El Hamad's applications, and it filed objections to the affidavit El Hamad relied upon in his response to the Board's motion for summary judgment. The Board also included with its objections an affidavit by Dana Burghdoff, the Board's executive secretary and a deputy director in the City's planning and development department, which El Hamad did not object to. Burghdoff stated (with attached supporting documents) that the two businesses in the area that received ten-year extensions had different zoning (K-zoning) than El Hamad's Property, that property zoned "K" allows for ten-year extensions, and that

5

property zoned "I" does not.[6]  The trial court sustained the Board's objections to El Hamad's affidavit, and it granted the Board's motion for summary judgment.  This appeal followed.

### III.  El Hamad's Issues

El Hamad argues that the Board's summary judgment had no legitimate support on either the facts or the law and that the denial of his requested special exception was an improper action that arbitrarily reversed the Board's prior decisions and created "a new policy/legislation with regards to the proper zoning in this area, far beyond its grant of authority under State law."  In his first three issues, he specifically complains that he should not have been denied a special exception because:  (1) the trial court applied the incorrect standard of review to his writ of certiorari appealing the denial of his special exception; (2) the Board's actions were improper because they were essentially legislative

---

[6] *See also* FORT WORTH, TEX., CITY CODE app. A., ORD. 13896 § 5.141(C) (stating that in the "K" district, the first approval of a special exception shall be limited to a period not to exceed ten years and each subsequent extension shall also not exceed ten years).  El Hamad's counsel at the September 2007 hearing demonstrated his awareness of the zoning differences, noting,

> [W]hat struck me about this case was the adjacent property which is up here, this Action Auto [another junkyard].  It is in a different zoning district.  It's in K.  It came before this board in 2004 and received an exceptional variance [sic] for 10 years.  The property next door, the neighbor, if you will, is Mr. Hamad's property.  It's in "I," but it operates the same type of business.

6

in nature, thereby breaching the statutory framework limiting the methods by which zoning may be changed; and (3) the Board's actions were arbitrary and capricious because the use in question had not changed, it was a conforming use, the Board had granted numerous extensions for the use and similar activities, and the denial was triggered by political protests.[7] In his fourth issue, he complains that the trial court erred by excluding "various items" in his affidavit.

## IV. Discussion

### A. Standard of Review

The appropriate standard of review with regard to a board of adjustment's order is "whether the board of adjustment has abused its discretion, i.e., whether it has acted without reference to guiding rules and principles or whether it has acted arbitrarily and unreasonably." *W. Tex. Water Refiners v. S & B Beverage Co.*, 915 S.W.2d 623, 626 (Tex. App.—El Paso 1996, no writ).

A board's order carries the presumption of legality, and the party attacking it bears the burden of establishing its illegality. *Id.*; *see also Pick-N-*

---

[7] The Board rephrases El Hamad's first three issues as, "[T]he Board abuse[d] its discretion when it denied him a third request within twenty months for a special exception to operate a motor-vehicle junkyard."

7

*Pull Auto Dismantlers v. Zoning Bd. of Adjustment of City of Fort Worth*, 45 S.W.3d 337, 339–40 (Tex. App.—Fort Worth 2001, pet. denied).

The issue of whether a board abused its discretion is a question of law appropriately determined by summary judgment. *Pick-N-Pull Auto*, 45 S.W.3d at 340. In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.,* 73 S.W.3d at 215. Here, we must determine whether the Board proved as a matter of law that it did not abuse its discretion—that is, if there is some evidence of substantive and probative character supporting the Board's decision, the trial court did not abuse its discretion by granting the Board's motion for summary judgment. *See Pick-N-Pull Auto*, 45 S.W.3d at 340.

**B. Analysis**

In *Pick-N-Pull*, this court concluded that the board, as factfinder, did not abuse its discretion by denying a special exception sought by an automobile dismantling business in light of conflicting evidence presented by the business (that it would be a good neighbor) and by its neighbors (letters expressing compatibility concerns). *Id*. at 340–41.

Having reviewed the entire record, we conclude, as we did in *Pick-N-Pull*, that as a matter of law the Board, as factfinder, did not abuse its discretion by denying El Hamad's special exception when it denied an extension of the special exception after considering both El Hamad's testimony (that the Business was a good neighbor) and that of his neighbors (that the Business was no longer compatible with the surrounding area).[8] *See id.*; *see also Sw. Paper*

---

[8] Based on the record before us, we cannot agree with El Hamad's statement in his brief that,

> The Board itself had previously imposed standards on this business and similar businesses in the area so the issue of incompatibility had been previously used and addressed and *found to be something which could be resolved by certain ameliorating activities* rather than this *sudden change* to simply deny the possibility of having such activities because of political pressure and a wish to change the fundamental issues of land use and thereby thwart the rules imposed by the City Council and the Legislature. [Emphasis added.]

Before the vote in September 2007, one of the Board members made the following comments in response to El Hamad's counsel's "comment about the

9

*Stock*, 980 S.W.2d at 808 ("[T]he Board may not grant a special exception unless it determines that the proposed use is compatible with the use of the neighboring property.").

Furthermore, we cannot say that the trial court abused its discretion by sustaining the Board's objections to El Hamad's affidavit. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) ("We review a trial court's decision to admit or exclude evidence for an abuse of discretion."). Given that the summary judgment issue before the trial court was whether the Board abused its discretion by denying El Hamad's special exception application based on *compatibility*, we cannot say that the trial court abused its discretion by sustaining the Board's relevance objections to El Hamad's statements about *compliance*, to his allegations about the two similar nearby businesses (the two

---

other businesses in the neighborhood and how long they have to go on their permits," stating that the Property

> is immediately north of that residential development to the south. The others, as I understand it, are further to the north, north of your client's property, and they . . . are not abutting or adjoining the residential development.
>
> So because this one does abut the residential development as I understand it, I will not support the motion to grant even a one-year extension.

10

K-zoned businesses) receiving ten-year extensions on their special exceptions, or to his other statements that essentially duplicated the hearing testimony.[9]

Finally, to the extent that we have not addressed all of El Hamad's arguments, we overrule them as inadequately briefed.[10]  *See* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279,

---

[9] In response to El Hamad's statement that his position was not substantially different "at all" from the position he took at the hearing, the trial court asked, "Why should I consider it when I've got the transcript of the hearing?"

[10] An appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument.  *See Hall v. Stephenson*, 919 S.W.2d 454, 466–67 (Tex. App.—Fort Worth 1996, writ denied).  Furthermore, "we know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them."  *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (internal quotation omitted).  Thus, inadequately briefed issues may be waived on appeal.  *Hall*, 919 S.W.2d at 467.

Although El Hamad presents four issues for our review, he cites only one case—*West Texas Water Refiners*—and only in the discussion of his first issue, for the proposition that the Board may not impose more terms or change anything other than simply determining compatibility.  915 S.W.2d at 626.  We note that the Board did not impose any terms or conditions when it denied El Hamed's application in September 2007—the only order from which El Hamed appealed first to the trial court, and now to this court.  El Hamad also makes passing references to local government code sections 211.008 through 211.011 in his first issue and to the Fourth and Fourteenth Amendments to the United States Constitution in his third issue, but it is unclear how these provisions support his arguments.

11

284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing).

For the foregoing reasons, we overrule El Hamad's four issues.

## V.  Conclusion

Having overruled El Hamad's four issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: CAYCE, C.J.; MCCOY and MEIER, JJ.

DELIVERED: May 14, 2009